**United States Court of Appeals
Fifth Circuit**

**F I L E D**

**September 18, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 02-50694

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE RAMON DOMINGUEZ-SANCHEZ

Defendant-Appellant

No. 02-50746

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RICARDO MARTINEZ-BORJON

Defendant-Appellant.

Appeals from the United States District Court
For the Western District of Texas, Pecos

(P-01-CR-259-2-F)

Before BARKSDALE, DeMOSS and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Jose Ramon Dominguez-Sanchez and Ricardo Martinez-Borjon were

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

traveling on Highway 385 when they were stopped by border patrol agents. Sanchez and Borjon were arrested after two open sacks containing bundles of marijuana were found in the back seat of their vehicle. Sanchez and Borjon filed motions to suppress the evidence seized and a statement made by one of them at the time of the stop, arguing that there were no existing articulable facts supporting a reasonable suspicion that justified the stop of their vehicle. A magistrate judge heard the motions and recommended that they be denied. The district court then conducted *de novo* review at a hearing and the motions to suppress were denied. Sanchez and Borjon entered conditional guilty pleas to possession with intent to distribute 100 kilograms or more of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), but reserved their right to appeal the district court's ruling denying their motions to suppress. We affirm the district court's denial of the motions to suppress.

## I.

The following evidence was found by the magistrate judge and district court concerning the stop. Border Patrol Agent Harris Clanton, who had over 23 years experience at the Alpine Station, testified that he had been involved in hundreds of cases involving illegal aliens and drug smuggling. He explained that the Alpine Station is responsible for patrolling Highway 385 that runs to and from Big Bend National Park. He stated that there are numerous

2

places in the southern border of the Alpine patrol area where drugs or illegal aliens can be smuggled across the river without being detected.

Clanton testified that Highways 385 and 118 are continually used to transport illegal aliens and contraband north into other areas of the state. He testified that there are permanently established checkpoints on both highways, but that during the prior year, the checkpoint at Highway 118 had been open 24 hours a day, five or six days a week, while the checkpoint at Highway 385 had been open only 12 to 14 hours a day. Clanton testified that smugglers usually know if a particular checkpoint is open or closed and will go through when they know it is closed.

On the night of the arrest, Clanton and another agent, George Lopez, were observing traffic on Highway 385 from inside the closed checkpoint.[1] Clanton testified that he was familiar with the vehicles of the people who lived in the area and reported that the locals generally do not drive on the road in the middle of the night. He testified that it is a two-hour drive from the headquarters at Big Bend Park to the checkpoint on Highway 385 and that tourists only occasionally leave the park and drive the highway late at night.

The Marfa Sector Communications Officer notified Clanton

---

[1] Although the agents were present, the checkpoint was apparently closed because of a government policy or regulation that requires three agents to be present before a checkpoint can be open.

at 1:17 A.M. that several sensors had been activated indicating that a northbound vehicle was approaching their checkpoint. Sensors are electronic devices which detect vehicles as they travel the roadway. Clanton reported that one of the activated sensors was located within fifty miles of the border. Based on the time span between sensor hits and his experience, Clanton believed that the same vehicle activated the different sensors.

Clanton and Agent Lopez stepped outside the checkpoint to a lighted area and were standing there as Sanchez and Borjon drove by in a 1998 Dodge Durango. The vehicle was not familiar to the agents, and it was not carrying a trailer or anything that indicated that it was a tourist vehicle. Clanton testified that in his experience sports utility vehicles, like the Durango, had been used to smuggle illegal aliens.

As the vehicle drove past, the passenger looked at the agents and continued turning his head back "like he was exceptionally interested in the fact that [the agents] were there," according to Clanton. The agents decided to follow the vehicle to obtain its registration. Clanton testified that he stayed close behind the vehicle while he was getting its license number, and the vehicle continued to travel at 70 m.p.h. even through an "S" curve in the road. After he obtained the license number and backed away from the vehicle, the Durango decelerated to about 45 m.p.h. and continued at that speed for about a mile and a half. When they got to Marathon, the vehicle turned right onto Highway 90 and

4

headed east toward Sanderson.

Clanton received a communication that the vehicle was registered to a woman in Midland, Texas, which was known to be a "hub for aliens and narcotics being transported further out of [the] area," according to Clanton. Clanton found it strange that the vehicle did not take the turn-off that would have been the most direct route to Midland, and decided to make an immigration check.

Clanton caught up with the vehicle and activated his overhead lights, and the vehicle pulled over to the right-hand side of the road. As he approached the vehicle, he could not see inside because the Durango had tinted windows. He shined his flashlight into the window and could see something was blocking the view from the rear of the vehicle. As Clanton moved closer, he could see that there were two burlap bags on the back seat, and he could see taped rolled bundles through the openings in the bags. He realized that it was marijuana and approached the driver.

Clanton asked the occupants what they were doing with the marijuana and the driver did not respond, but the passenger said it was "weed." The agents placed both individuals under arrest and brought the vehicle and substance back to the Alpine Station. The substance field tested positive for marijuana. The total weight of the marijuana seized was 295.12 pounds.

Clanton testified that he made the stop because of several factors. He believed that the sensor hits showed that the vehicle came from the international border area. Clanton testified that it

was not unusual for a passenger to look at the agents as the passenger's vehicle passed but he found the duration of the passenger's look in this circumstance to be unusual. Based on the sensors and the passenger's conduct he decided to check the vehicle's registration. Clanton decided to make the stop after he learned that the vehicle was registered in Midland, and the vehicle did not make the turn that was the most direct route to that city. Clanton testified that the stop was also made based on the time of night, the notoriety of the road for illegal activity, and the behavior of the driver and passenger. Clanton stated that generally about half of his nighttime stops result in arrests. Clanton also testified that sports utility vehicles are often used by tourists but also by smugglers and this vehicle did not appear to be a tourist vehicle.

## II.

The magistrate judge considered Agent Clanton's substantial experience detecting illegal alien and drug activity, the sensor alerts indicating that the vehicle originated its journey at the border and was traveling north on Highway 385, the time of night, the notoriety of the highway as a drug smuggling path, the unfamiliarity of the vehicle to the agent, the behavior of the driver and passenger, and the vehicle's route, and found these factors gave the agents reasonable suspicion to make the stop. The magistrate judge determined that the presence of contraband in

plain view and the passenger's statement gave the officers probable cause to arrest the defendants and seize the contraband. The magistrate judge recommended that the motions to suppress be denied.

The defendants filed objections to the recommendation. The district court determined that the defendants had not presented any evidence contradicting Agent Clanton's testimony and that the magistrate judge's finding that the agent was credible was not contradicted by anything in the record. The district court relied on the evidence of the vehicle's traveling within fifty miles of the border and the other factors cited by the magistrate judge and determined that, based on the totality of the circumstances, there were sufficient facts to justify a reasonable suspicion to make the stop. The district court denied the motions to suppress.

Sanchez was sentenced to a term of imprisonment of 70 months, to be followed by a four-year term of probation. Borjon was sentenced to a term of imprisonment of 60 months, to be followed by a four-year term of supervised release. After sentencing, Sanchez filed a timely notice of appeal. Borjon filed a motion to file an out of time appeal, and the district court granted the motion.

On appeal Sanchez argues that a reasonable suspicion for an investigatory stop cannot be based on an unparticularized "hunch" and that there were no articulable facts sufficient to justify the stop. Borjon argues that the factors relied upon by the agent were not specific to their vehicle and would allow agents to stop every

vehicle traveling that road that the agent did not recognize as a local vehicle. The government argues that the totality of the circumstances gave rise to articulable facts justifying the stop and that the district court was correct in not granting the motions to suppress.

### III.

When reviewing the denial of a motion to suppress, the district court's factual findings are reviewed for clear error, and its legal conclusions, including whether there was a reasonable suspicion for the stop, are reviewed de novo. United States v. Jacquinot, 258 F.3d 423, 427 (5th Cir. 2001) (per curiam). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. Id. The evidence presented at a suppression hearing must be viewed in the light most favorable to the prevailing party. Id. (quotation and citation omitted).

"A border patrol agent conducting a roving patrol may make a temporary investigative stop of a vehicle only if the agent is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle's occupant is engaged in criminal activity." Id. The Government has the burden to prove by a preponderance of the evidence that the investigatory stop was constitutional. United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001).

As both the magistrate judge and district court noted, several

8

factors may be considered in determining whether the agent had reasonable suspicion justifying the stop. Id. These factors include, but are not limited to, 1) the character of the area in which the vehicle is observed; 2) its proximity to the border; 3) the patterns of traffic on that road; 4) the agent's previous experience with alien smuggling; 5) information about recent crossings or other illegal activity in that area; 6) the driver's behavior, such as erratic driving; 7) the characteristics of the vehicle involved and whether it appears to be heavily loaded; 8) the number of passengers and their behavior; and 9) whether the occupants have characteristics of persons living outside the United States. Id. at 432-33; United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975). No single factor determines the issue; the case must be examined based on the totality of the circumstances known to the agent when the stop was made and the agent's experience in evaluating such circumstances. Guerrero-Barajas, 240 F.3d at 433. In the present case, although not all the factors indicate that the officers had reasonable suspicion to stop Sanchez and Borjon, most of the factors indicate the agents could articulate facts and rational inferences based on those facts that lead to the constitutionally permissible stop of Sanchez and Borjon.

First and importantly, whether the agents had reason to believe that the vehicle in question has recently crossed the border is one of the vital elements in determining whether there

was reasonable suspicion for the stop. Jacquinot, 258 F.3d at 428. If the vehicle is traveling more than fifty miles from the border, it is viewed as being too far away to raise an inference that it originated its journey there. Id. If the vehicle is first observed within fifty miles of the border, but stopped at a further point, the proximity element is satisfied. Id. The activation of sensors by the vehicle near the border supports a finding that the vehicle crossed over the border. Id. Sensor hits may be supportive of reasonable suspicion in cases where the type of vehicle stopped was the same as the vehicle detected by the sensor. United States v. Inocencio, 40 F.3d 716, 723 (5th Cir. 1994).

Agent Clanton was not at liberty to testify as to the precise location of the sensors that were activated but could testify that some of the sensors were within fifty miles of the border. Based on the timing of the sensor alerts and that fact that the Durango was the only vehicle seen traveling the road, it can be inferred that Sanchez and Borjon came from the border. See United States v. Aguirre-Valenzuela, 700 F.2d 161, 163 (5th Cir. 1983) (per curiam) (finding reasonable suspicion where "the timing of the sensor alerts and the arrival of the Appellant's car at the agents' location certainly were coincident enough to allow a reasonable inference that this was the car which had hit the sensors").

Second and also significant in this case, the level of experience of the agent should be a factor in determining whether reasonable suspicion exists. United States v. Aldaco, 168 F.3d

10

148, 151 (5th Cir. 1999). Agent Clanton had twenty-three years of experience and had been assigned to the Alpine Station the entire time. Agent George Lopez, who was working with him, had less than a year of experience. Clanton's substantial experience weighs in favor of the reasonable suspicion finding.

Additionally, other factors may support reasonable suspicion. A driver's behavior may support a reasonable suspicion, although noticeable deceleration does may not indicate much. United States v. Jones, 149 F.3d 364, 370 (5th Cir. 1998); United States v. Diaz, 977 F.2d 163, 165 (5th Cir. 1992). In this case both the magistrate judge and district court found that the driver acted unusual. A passenger's behavior in looking at an officer can be given only little weight. United States v. Moreno-Chapparro, 180 F.3d 629, 632 (5th Cir. 1998). Here the lower courts emphasized the extended look the passenger gave the agents. The road's reputation as a smuggling route adds to the reasonableness of the suspicion. Jacquinot, 258 F.3d at 429. The stop occurred on a known smuggling route around 2:00 A.M. and at a time when the checkpoint on Highway 118 was known to be open. See United States v. Villalobos, 161 F.3d 285, 289 (5th Cir. 1998) (recognizing that the time of day that the vehicle is traveling "is a permissible consideration"). Further, the record also indicates that during the two week time period before this stop only 3 or 4 vehicles had passed this checkpoint at this time of the day. Agent Clanton did not recognize the Durango as belonging to a local and the Durango,

11

unlike the usual tourist vehicles, was not pulling any recreational equipment. And Clanton testified that he had previously been involved in cases in which the type of vehicle involved in this case had been used to transport aliens.

Therefore, based on the totality of the circumstances, both the magistrate judge and district court found that reasonable suspicion existed to make the stop and we agree.

## IV.

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, for the reasons set forth above and essentially for the reasons given by both the magistrate judge and district court, the denial of Sanchez's and Borjon's motions to suppress is affirmed.

**AFFIRMED.**