**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Jesus Gonzalez PACHECO,
Defendant-Appellant.**

**No. 79–5600
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 12, 1980.

* Fed.R.App.P. 34(a), 5th Cir. R. 18.

Robert A. Shivers, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, James E. Bock, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

At approximately 9:00 a. m. on June 11, 1979, two United States Border Patrol agents in their government vehicle pulled alongside defendant Jesus Gonzalez Pacheco as he drove his 1976 two-door Pontiac north on Interstate Highway 35 near Dilley, Texas. They signaled Pacheco to stop and he pulled over. The officers questioned Pacheco regarding his citizenship and when they discovered that Pacheco's four passengers were undocumented Mexican aliens, the agents placed him under arrest. Later, he was indicted and charged with four counts of violating 8 U.S.C. § 1324(a)(2). A jury of the United States District Court for the Western District of Texas convicted Pacheco of all four counts and he appeals. Because the circumstances surrounding the stop of Pacheco indicate that the agents exceeded their authority, we reverse the conviction for failure of the district court to grant Pacheco's motion to suppress.[1]

Since Pacheco was stopped by a roving border patrol, it is clear that the detention was constitutionally permissible only if the agents complied with the requirements of *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). *E. g., United States v. Lamas,* 608 F.2d 547, 548–49 (5th Cir. 1979); *United States v. Sarduy,* 590 F.2d 1355, 1358 (5th Cir. 1979). Under the *Brignoni-Ponce* standard, the stop of Pacheco was consistent with the mandates of the Fourth Amendment if the agents were "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant[ed] suspicion that [Pacheco's vehicle] contain[ed] aliens who [were] illegally in the country." 422 U.S. at 884, 95 S.Ct. at 2582. Several factors may be considered in determining whether a stop is justified,[2] but no particular factor is controlling; the "totality of the particular circumstances" governs. *Id.* at 885 n.10, 95 S.Ct. at 2582 n.10.

---

1. Before trial, the court conducted a hearing on Pacheco's motion to suppress the evidence (the aliens) as fruit of an unconstitutional detention. *See United States v. Cruz,* 581 F.2d 535, 539, 543 (5th Cir. 1978) (en banc). The court denied Pacheco's motion. Defendant's failure to reiterate his objection to the evidence during trial does not constitute a waiver. *Id.* at 542–43.

2. Among the factors that bear on whether a roving patrol stop is justified are: "(1) characteristics of the area in which the vehicle is encountered; (2) unusual patterns of traffic on the particular road; (3) proximity to the border; (4) information about recent illegal crossings in the area; (5) appearance of the vehicle; (6) number and appearance of the passengers; (7) behavior of the driver; and (8) behavior of the passengers. [*United States v. Brignoni-Ponce, supra,* 422 U.S.] at 884–85 n.10, 95 S.Ct. 2574 [at 2581–2582]." *United States v. Lamas, supra,* 608 F.2d at 549. Also to be considered is the experience of the agents. [*United States v. Brignoni-Ponce, supra,* 422 U.S.] at 885, 95 S.Ct. at 2582.

■ As we noted in *United States v. Lamas, supra,* 608 F.2d at 549:

In a number of recent decisions, this Court has stated that a vital element of the *Brignoni-Ponce* test is whether the agent had "reason to believe that the vehicle had come from the border." *United States v. Ballard,* 600 F.2d 1115, 1119 (5th Cir. 1979); *United States v. Rivera,* 595 F.2d 1095, 1098 n.4 (5th Cir. 1979); *United States v. Lopez,* 564 F.2d 710, 712 (5th Cir. 1977); *United States v. Escamilla,* 560 F.2d 1229, 1231 (5th Cir. 1977); *United States v. Woodward,* 531 F.2d 741, 743 (5th Cir. 1976); *United States v. Martinez,* 526 F.2d 954, 955 (5th Cir. 1976); *United States v. Del Bosque,* 523 F.2d 1251, 1252 (5th Cir. 1975) (per curiam). We have found this element of the *Brignoni-Ponce* test missing where the stop occurred a substantial distance from the border. *See United States v. Lopez,* 564 F.2d 710, 712 (5th Cir. 1977) (55 miles from border); *United States v. Escamilla,* 560 F.2d 1229, 1230 (5th Cir. 1977) (70 miles from border); *United States v. Martinez,* 526 F.2d 954, 955 (5th Cir. 1976) (50 miles from border); *United States v. Del Bosque,* 523 F.2d 1251, 1252 (5th Cir. 1975) (per curiam) (60 miles from border).

Pacheco's car was spotted by the border patrol agents approximately eighty-five miles from the United States-Mexican border on Interstate 35, about midway between Laredo (at the border) and San Antonio. Interstate 35 is a major thoroughfare—a paved four-lane divided highway known by border patrol agents as a route out of Mexico for undocumented aliens. Along I–35 between Laredo and Dilley (where Pacheco was stopped) lie the towns of Orvil, Callaghan, Encinal, Atlea, Artesia Wells, Cotulla, and Millett. Moreover, the interstate is intersected by highways 59, 83, 44, 1492, 133, 468, 2895, 97, 469, 85 and 117. As we stated in *United States v. Escamilla, supra,* a case involving a stop seventy miles from the border on a highway along which were located fewer towns and fewer intersecting roads than involved here, "it was pure speculation on the part of the agents to opine that appellant's journey originated at the border." 560 F.2d at 1232; *United States v. Lopez, supra,* 564 F.2d at 712; *see United States v. Lamas, supra,* 608 F.2d at 549; *United States v. Byrd,* 483 F.2d 1196, 1201 (5th Cir. 1973).

The absence of a reason to believe the vehicle had come from the border, however, is not alone dispositive. We must determine whether other "articulable facts . . . reasonably warrant[ed] suspicion." *United States v. Brignoni-Ponce, supra,* 422 U.S. at 884, 95 S.Ct. at 2581; *United States v. Lamas, supra,* 608 F.2d at 549; *United States v. Escamilla, supra,* 560 F.2d at 1232; *United States v. Lopez, supra,* 564 F.2d at 712. We hold they did not. One of the border patrol agents testified that the rear of Pacheco's car rode low to the ground and appeared heavily loaded.[3] In light of *United States v. Lamas, supra,* 608 F.2d at 549, this factor has little weight. In *Lamas,* the car, a 1966 Ford with Colorado license plates, flashy mirrors and "fuzzy balls" around the windows, appeared heavily loaded to a border patrol agent. The agent in *Lamas* also knew that the highway was a route from Mexico used by illegal aliens; "that the area was not visited frequently by tourists[;] and that 48% of the cars in which illegal aliens had been found in the area had Colorado plates." *Id.* Nevertheless, the Court held that the stop in *Lamas* was not based on reasonable suspicion. *Id.*

The agents also testified that the four aliens "hunkered down" in the seat of Pacheco's car and avoided eye contact with the agents.[4] While such slouching is relevant,

---

**3.** Besides the five people traveling in the passenger compartment of Pacheco's car, the agents' search revealed a spare tire and extra rim in the trunk of the auto.

**4.** Although all four of the undocumented aliens testified at trial that Pacheco met them in Mexico and helped them in their trek northward, none testified that they slouched in the car in an attempt to avoid detection. One stated that he slept until the agents stopped the car and another indicated that he sat up normally, unaware of the presence of the agents until Pacheco parked the car at roadside.

it is not sufficient, even when combined with other observations, to justify the stop. *United States v. Lamas, supra,* 608 F.2d at 549. Moreover, the avoidance of eye contact can have no weight whatsoever. *Id.* at 550; *United States v. Escamilla, supra,* 560 F.2d at 1223. "Reasonable suspicion should not turn on ophthalmological reactions of the appellant." *United States · v. Lopez, supra,* 564 F.2d at 712.

REVERSED.