Revised February 5, 1999

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-50641

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO MORENO-CHAPARRO,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

September 30, 1998

Before POLITZ, Chief Judge, WISDOM and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Alfredo Moreno-Chaparro appeals the district court's denial of his motion to suppress evidence allegedly obtained as the result of an unconstitutional stop by a United States Border Patrol agent. For the reasons assigned we conclude and hold that the stop at issue violated fourth amendment guarantees.

# BACKGROUND

On March 5, 1997 at approximately 2:00 p.m., United States Border Patrol Agent Alfred Hollenbeck was observing activity on Highway 67 from a temporarily closed immigration checkpoint. The checkpoint involved is located about five miles south of Marfa, Texas and approximately 60 miles north of Presidio, Texas and the Mexican border. Traffic included a black Chevrolet pickup truck traveling northbound.[1] As the truck passed through the checkpoint the male driver, later identified as Moreno, slowed and appeared surprised to see the patrol car alongside the checkpoint. Hollenbeck testified that when a checkpoint is closed, drivers typically "just go about their business and they don't think twice about stopping or looking or staring." Upon cross examination, however, Agent Hollenbeck candidly conceded that it was not unusual for a driver to decelerate and glance at the checkpoint when closed.

When Moreno passed though the checkpoint Hollenbeck could not determine that he was Hispanic. Although a Mexican, Moreno has light skin, blonde to light brown hair, and green eyes. Hollenbeck decided to conduct an immigration check because, he says, he suspected that Moreno was an illegal alien and possibly was

---

[1]Agent Hollenbeck testified that he believed that the highway was particularly vulnerable to smugglers during shift changes because of reduced manpower. A shift change usually occurs at 2:00 p.m.

harboring other illegal aliens in the truck. Prior to stopping Moreno, Hollenbeck ran a license check on the vehicle and learned that it was registered to Isma Moreno of El Paso, Texas.

After the stop, Moreno gave Hollenbeck his resident alien card and explained that he did not speak English. In their Spanish exchange, Hollenbeck asked Moreno about the origin of his trip, his destination, and whether the truck belonged to him. Moreno said that the truck belonged to his sister and explained that he was returning from Mexico where he had been visiting relatives for the past two weeks. Hollenbeck indicated that he was puzzled by this answer because Moreno did not appear to have luggage.

Hollenbeck asked for consent to search the vehicle. He then noticed that the truck was clean except for the undercarriage which was caked with mud. He testified that mud is often used to mask new bolts and changes made to hide drugs. Although a canine search did not result in an alert for the presence of drugs, Hollenbeck directed Moreno to return the vehicle to the checkpoint for closer inspection. After the mud was removed, Hollenbeck noticed new bolts supporting the gas tank. The agent then secured permission to search the inside of the gas tank and discovered therein a hidden compartment containing 185 pounds of marihuana.

**ANALYSIS**

In **United States v. Brignoni-Ponce**, the Supreme Court directed that "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country."[2] Several factors weigh into the determination whether a stop is justified.[3] No single factor is determinative; the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers.

In the case at bar, the district court found that the following facts supplied reasonable suspicion: (1) the agent's experience; (2) the time of day; (3) the particular type of vehicle; (4) the driver slowed down to look at the checkpoint and seemed surprised to see an officer there; (5) the agent found that the driver appeared extremely nervous; (6) the clean appearance of the vehicle's exterior coupled with the muddy appearance of the underside of the vehicle; and (7) the driver did not appear to have luggage despite a two week visit with relatives in

---

[2] 422 U.S. 873, 884 (1975).

[3] Factors to be considered include: (1) characteristics of the area in which the vehicle is encountered; (2) unusual patterns of traffic on the particular road; (3) proximity to the border; (4) information about recent illegal crossings in the area; (5) appearance of the vehicle; (6) number and appearance of the passengers; (7) behavior of the driver; and (8) behavior of the passengers. **Brignoni-Ponce**, 422 U.S. at 884-85.

Mexico. While we would agree that this collage of factors may be sufficient to supply an officer with reasonable suspicion, we must perforce note that only the first four were known by Agent Hollenbeck at the time of the stop. Obviously only those factors known to the officer at the time of the stop can be considered when determining whether the stop was reasonable.

A vital element of the **Brignoni-Ponce** test is whether the agent had reason to believe that the vehicle in question had come from the border.[4] It appears manifest that Agent Hollenbeck did not have reasonable grounds to believe that Moreno had crossed the border. Moreno was 60 miles north of the Mexican border, driving a Chevrolet pickup truck with valid Texas license plates, and could have been coming from nearby communities, including Presidio, which is a town populated by several thousand residents. This factor alone is not controlling and other factors must be given appropriate consideration in the determination whether reasonable suspicion existed.

The government places heavy emphasis on Moreno's "surprised" appearance when he saw Agent Hollenbeck parked at the checkpoint. Although Hollenbeck noted that most drivers do not look to see if an officer is parked at a closed checkpoint, he testified that it was not unusual for them to do so. We cannot help

---

[4] **United States v. Orona-Sanchez**, 648 F.2d 1039 (5th Cir. 1981).

but note that the government has variously relied on both sides of the factor, on some occasions contending that it is suspicious for a person to look and on other occasions insisting that it is suspicious not to look. We are persuaded that in the ordinary case, whether a driver looks at an officer or fails to look at an officer, taken alone or in combination with other factors, should be accorded little weight.[5] To conclude otherwise "would put the officers in a classic 'heads I win, tails you lose' position. The driver, of course, can only lose."[6] The government maintains that in addition to looking over at the parked Border Patrol car, Moreno looked surprised at seeing an agent parked at the checkpoint. We perceive little significance in a driver looking surprised to see a Border Patrol agent parked at a closed immigration checkpoint. More is needed to articulate the mandated reasonable suspicion required for a stop by the Supreme Court's teachings.

Prior to stopping Moreno, Agent Hollenbeck ran a license plate check and discovered that the truck Moreno was driving was registered to a female resident of Texas. The government insists that this was a factor contributing to reasonable suspicion. Hollenbeck, however, testified to the obvious, i.e., that it is not unusual

---

[5] **United States v. Nichols**, 142 F.3d 857 (5th Cir 1998); **United States v. Chavez-Villarreal**, 3 F.3d 124 (5th Cir. 1993); **United States v. Escamilla**, 560 F.2d 1229 (5th Cir. 1977).

[6] **Escamilla**, 560 F.2d at 1233.

for a man to drive a vehicle registered to a woman.  Further, the type of vehicle was not suspect.  Although Agent Hollenbeck testified that the Border Patrol carefully watches "Chevys in general," it would be manifestly unreasonable to target every Chevrolet pickup truck driven on Texas highways.  The agent could not point to anything suspicious about the truck.  It contained no visible passengers, it had not been modified in an obvious way, and it was not riding low to the ground as if it were loaded down with people or contraband; it was neither particularly clean nor particularly dirty.  It was just an average pickup truck on a highway in Texas.

The government stresses that the time of day that Moreno passed though the checkpoint added to the suspicion.  Moreno drove past the checkpoint at approximately two o'clock in the afternoon.  The government contends that this serendipitous time contributes to reasonable suspicion because it is the time of the Border Patrol shift change.  During the shift change, we are told, the roads are left virtually unchecked and there accordingly is a particular vulnerability to smugglers who are aware of the timing of the shift change.  While we may empathize with the Border Patrol's concerns regarding increased exposure during times of reduced manpower, we are not willing to sacrifice the constitutional protections of drivers to lessen the perceived adverse impact resulting from the decision of the Border Patrol to change shifts at the same time everyday.

In summary, we find, conclude, and hold that each factor presented by the government is non-remarkable and unsuspicious. Taken together, and considered in the context of the agent's experience, the factors known to the agent at the time of the stop of Moreno's vehicle fall far short of providing the required reasonable suspicion. "In the context of border area stops, the reasonableness requirement of the Fourth Amendment demands something more than the broad and unlimited discretion sought by the Government."[7]

Moreno's motion to suppress should have been sustained. We therefore REVERSE the order of the district court denying the motion to suppress, grant said motion, and REMAND for further proceedings consistent herewith.

---

[7] **Brignoni-Ponce**, 422 U.S. at 882.