IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-50911

_____


UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

CESAR ADRIAN ESPINOSA-ALVARADO

Defendant – Appellant

------------------------------------------------------------
Appeal from the United States District Court
for the Western District of Texas

------------------------------------------------------------

August 9, 2002


Before DAVIS, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:

Appellant Cesar Adrian Espinosa-Alvarado ("Espinosa-Alvarado") pled guilty, conditionally, to possession with intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1) and was sentenced to a 33-month term of imprisonment.  He appeals, challenging the denial of his pre-trial suppression motion.

-1-

**BACKGROUND**[1]

On Thursday, February 1, 2001, at approximately 6:45 a.m.,[2] sensor hits received by the United States Border Patrol alerted to a border crossing and entry into the United States. From these sensors, the Border Patrol agents in the Fort Hancock Border Patrol Station learned that a vehicle had crossed the United States/Mexico border approximately 13 miles west of the station, heading toward Texas Highway 20, a two-lane highway that closely parallels Interstate 10 and the border.

In response, agents Omar Ortiz ("Ortiz) and Eduardo De La Cruz ("De La Cruz"), experienced Border Patrol Agents,[3] headed west on Highway 20 in a well-marked Chevy Tahoe. As they were traveling, another agent radioed twice, first indicating that he had found an abandoned Dodge Durango parked along Highway 20 with a flat tire three and a half miles west of the sensor alerts and then, a minute later, that the vehicle appeared to be carrying narcotics.

Shortly thereafter, Ortiz and De La Cruz observed a Mercury Grand Marquis coming towards them on Highway 20. The vehicle, which had New Mexico license plates, was approximately one mile west from the location of the sensor alerts, less than one mile north of the Texas/Mexico border and one hour from the Texas/New Mexico Boarder. This area of Hwy 20 is

---

[1]The following background section is derived from the findings of fact made by United States Magistrate Judge Durwood Edwards following a suppression hearing. In reviewing the denial of a motion to suppress, the trial court's factual findings are reviewed for clear error, and its legal conclusions, including whether there was reasonable suspicion for a stop, are reviewed de novo. United States v. Jacquinot, 258 F.3d 423, 427 (5th Cir. 2001).

[2]This was approximately the time of a Border Patrol "shift change." Smugglers often wait for a shift change to smuggle narcotics or aliens into the country.

[3]The agents had over eight and a half years of combined experience, almost all of it obtained while the agents were stationed at Fort Hancock.

known for its relatively high density of alien and narcotics smuggling.

From a distance, the agents observed a driver and a passenger, but as the agents approached the passenger slumped below the Marquis dashboard, and the driver did not look at the agents. After passing the vehicle, Ortiz and De La Cruz turned their vehicle around and began following the Marquis. At this point the passenger, later identified as Espinoza-Alvarado, was again visible. As the agents' vehicle approached, the Marquis slowed from 55 miles per hour, the speed limit, to 45 miles per hour and the driver began looking in his mirrors excessively. Ortiz and De La Cruz initiated an immigration stop of the vehicle.

Espinosa-Alvardo contends that the immigration stop was made in violation of the rights guaranteed him by the Fourth Amendment, and that therefore the evidence obtained subsequent to the stop was erroneously admitted by the district court. We disagree.

**ANALYSIS**

A border patrol agent conducting a roving patrol may make a temporary investigative stop of a vehicle only if the agent is aware of specific articulable facts that reasonably warrant suspicion "to believe that criminal activity 'may be afoot.'" United States v. Arvizu, 122 S.Ct. 744, 750 (2002) (citation omitted).

In making reasonable-suspicion determinations, we look at the "'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. at 750-51 (citations omitted).

-3-

"In determining whether a Border Patrol agent acted with reasonable suspicion, the district court may consider the following relevant factors: (1) known characteristics of a particular area, (2) previous experience of the arresting agents with criminal activity, (3) proximity of the area to the border, (4) usual traffic patterns of that road, (5) information about recent illegal trafficking in aliens or narcotics in the area, (6) the behavior of the vehicle's driver, (7) the appearance of the vehicle, and (8) the number, appearance and behavior of the passengers." United States v. Inocencio, 40 F.3d 716, 722 (5th Cir. 1995). "Although any single factor taken alone may be insufficient, under a 'totality of the circumstances' analysis, the absence of a particular factor will not control a court's conclusions." United States v. Cardona, 955 F.2d 976, 980 (5th Cir. 1992)

Here, there was clearly reasonable suspicion that the Marquis had originated from the border. Inocencio, 40 F.3d at 722 n. 6 ("This Court considers the fact that a vehicle may have recently crossed the border as a vital element in making an investigatory stop."). It was intercepted less than one mile from the border and approximately one mile from the location of the border crossing alerted by the sensors. See United States v. Nichols, 142 F.3d 857, 867 (5th Cir. 1998) ("Although a reasonable conclusion of proximity to the border does not alone constitute reasonable suspicion for a Border Patrol stop that is not at the border or its functional equivalent, this 'vital element' contributes significantly to the reasonableness of the Border Patrol agents' suspicion.").The Marquis was registered in New Mexico, but was over 45 miles from the New Mexico/Texas border on a work-day, driving east on a desolate stretch of Hwy 20 usually trafficked by local residents (rather than the main thoroughfare, Interstate 10). In addition, the experienced agents observed the Marquis on an area of Hwy 20 known for alien and narcotics

-4-

smuggling.  Furthermore, the Marquis was driving during a Border Patrol shift change, a time when, based upon the officers' experience, smugglers often attempt to smuggle aliens into the country.  Finally, Espinosa-Alvarado chose the moment the agents appeared in the distance to slump down in such a way that he disappeared (or nearly disappeared)[4] from the sight of an agent looking straight down into the vehicle,[5] while the driver responded to the agents' presence by looking excessively in his mirrors and slowing the Marquis to 10 miles per hour below the speed limit.

On the other hand, there was nothing about the Marquis that indicated to the agents that it

_____

[4]Espinosa-Alvarado contends that he did not disappear.  Espinosa-Alvarado also suggests that to the extent that he did disappear, he may have been "ben[ding] over to pick something up from the floorboard."  As noted above, we must defer to the trial court's findings of fact unless they are clearly erroneous.  Ortiz testified that Espinosa-Alvarado was not visible when their vehicles passed.  Accordingly, the finding of fact is not clearly erroneous despite slightly inconsistent testimony from De La Cruz that only one occupant was "clearly visible" when he and Ortiz passed.  See Jacquinot, 258 F.3d at 427  ("A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole.  Further, the evidence presented at a pre-trial hearing on a motion to suppress is viewed in the light most favorable to the prevailing party.") (citation omitted).  In addition, whether Espinosa-Alvarado disappeared or merely nearly disappeared is irrelevant, either way his action created the impression that he was attempting to avoid detection.  Moreover, "[a] determination that reasonable suspicion exists...need not rule out the possibility of innocent conduct."  United States v. Arvizu, 122 S.Ct. at 753.

[5]Espinosa-Alvarado cites United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993) for the proposition that his "movement did not give rise to reasonable suspicion that he was trying to hide from the agents [because] [i]t is not uncommon for passengers to recline in their seats."  However, it is not the act that particularly arouses suspicion, it is the timing.  Arguably, such an inference is at least partially dispelled by the fact that the agents could see the back of Espinosa-Alvarado's head after turning around to follow the Marquis.  But, to the extent that the agents believed that Espinosa-Alvarado was attempting to mask his appearance (in contrast to existence), it was reasonable to conclude that the impetus for ducking was removed after the agents passed.  Cf. id. ("That the passenger slouched in his seat as the Suburban approached the underpass could suggest that he was trying to hide, but such an inference is at least partially dispelled by the fact that he sat erect as Vonn's car drew **abreast**.") (emphasis added).  Ortiz specifically testified that in his experience illegal aliens often "will try and hide their face."

-5-

was being used for illegal activity. In addition, Ortiz testified that the sensors activated usually indicated narcotics trafficking rather than alien smuggling, and the agents were aware of the possibility that the Durango could have been the vehicle to have triggered them (though the agents were not aware of how long the already-abandoned Durango had been at its location). Nevertheless, taking all of the facts known by the agents into consideration, we conclude that the agents were reasonably suspicious of Espinosa-Alvarado's activities.

Because Espinosa-Alvarado's challenges to the evidence obtained subsequent to the stop are totally dependent upon a conclusion that the initial stop was unlawful, they fail.[6]

**CONCLUSION**

In light of the foregoing discussion, the conviction of Espinosa-Alvarado is hereby AFFIRMED.

---

[6]Finally, we note that Espinosa-Alvarado's brief could be construed as suggesting that Arvizu is inconsistent with our prior case-law. To the extent that Espinosa-Alvarado is making this argument, we disagree. Arvizu simply clarified the principle that reviewing courts "must look at the 'totality of the circumstances' of each case" when making reasonable-suspicion determinations, making clear that a "divide-and-conquer" style analysis is inappropriate. Id. at 750-51. Our case law has long been consistent with this principle. See e.g. United States v. Zapata-Ibarra, 212 F.3d 877, 881 (5th Cir. 2000) ("Our analysis is not limited to any one factor; rather, reasonable suspicion is a fact-intensive test in which we look at all circumstances together to 'weigh not [the] individual layers but the laminated total.'") (citing United States v. Edwards, 577 F.2d 883, 895 (5th Cir.1978) (en banc)).