E. GRADY JOLLY, Circuit Judge:
Ricardo Soto appeals his conviction, specifically the district court’s denial of his motion to suppress evidence resulting from a temporary investigative stop by Border Patrol agents on Interstate 35 near Cotulla, Texas. This evidence is at the bottom of Soto’s conviction for unlawfully transporting an illegal alien. For the reasons that follow, we conclude, in this admittedly close case, that the circumstances known and the conduct observed by the agents were sufficient to warrant reasonable suspicion justifying the stop. We therefore affirm the district court’s denial of Soto’s motion to suppress, and thus affirm the conviction.
I.
We affirm this conviction on the basis of reasonable inferences that can be drawn from the facts. In setting out the facts, we rely on credibility determinations made by the district court, which credited the Border Patrol’s version over that of the defendant. The credited facts are as follows:
On June 11, 2009, Border Patrol Agents Victor Barberena (“Agent Barberena”) and Abraham Esqueda (“Agent Esqueda”) were engaged in a roving border patrol on Interstate Highway 35 (“1-35”) between Laredo and San Antonio, 59 to 60 miles from the U.S.-Mexico border. During the relevant time here, the agents were sitting in their marked Chevy Tahoe on the east side of 1-35 at the end of a rest area, facing the highway, and observing northbound traffic from a distance of approximately 45 yards or more. The agents chose this location because nearby bushes concealed the Tahoe from passing motor *408 ists until they were almost directly in front of it, while providing the agents a clear view of passing traffic. Agent Barberena testified that this positioning helped to create an element of surprise, such that motorists “don’t have a chance to either duck down or try any other evasive actions” before the Border Patrol agents could observe them.
At approximately 8:00 a.m., a blue Nissan Maxima with heavily tinted windows passed the agents’ location. They saw a female driver, Leonor Garcia (“Garcia”); one male in the front passenger seat, the defendant Soto; and one male passenger in the rear passenger-side seat, Juan Carlos de la Cruz-Calamino (“Delacruz”). The agents observed that the front windows of the Nissan were completely rolled down, and one or both rear windows were rolled halfway down. The agents testified that as the Nissan passed the bushes, Delacruz turned and, upon seeing the agents, gave a “surprised look”[1] and immediately ducked down and leaned back into his seat, out of the agents’ view. The agents then pulled out and began to follow the Nissan.[2] Agent Esqueda ran the license plate and discovered that the Nissan was registered in Kingsville, Texas, which is southeast of the location and not directly accessible from 1-35.
The agents then paralleled the Nissan for approximately three minutes and observed that the rear windows had been rolled up. The agents could still see into the Nissan through the open front windows and, when they passed the Nissan, through the front windshield. They observed Garcia tapping “excessively” on the steering wheel as if playing along to music, doing so “very nervously” in Agent Barberena’s estimation. They also pulled ahead of the Nissan and observed Delacruz “ducking down” in the back seat. During the three-minute period as the agents drove alongside and looked into the Nissan, none of the occupants of the Nissan made eye contact with the agents. The agents ultimately determined that they had enough suspicion to pull the Nissan over for a temporary investigative stop. During their inspection Delacruz admitted that he was an undocumented alien. Soto was arrested on the spot and charged with unlawfully transporting an illegal alien.
After his indictment and before trial, Soto filed a motion to suppress the evidence as fruits of an unconstitutional detention. Following a suppression hearing on September 11, 2009, the magistrate judge issued a Report and Recommendation denying the motion. The district court accepted the Report and Recommendation and denied the motion by Memorandum and Order on January 12, 2010. Soto waived a jury trial and proceeded to trial on stipulated facts. He was convicted of unlawfully transporting an illegal alien, in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 2, and was later sentenced to twenty months of imprisonment and three years of supervised release. Soto timely appealed, invoking our jurisdiction under 28 U.S.C. § 1291.
II.
The question presented is whether the Border Patrol agents had reasonable suspicion that illegal activity was afoot *409 when they stopped the vehicle in which Soto was traveling. We review the factual findings of the district court for clear error and its legal conclusions de novo. United States v. Gomez, 623 F.3d 265, 268 (5th Cir.2010). “[W]e review the evidence in the light most favorable to the Government as the prevailing party.” Id. at 269.
“A border patrol agent conducting a roving patrol may make a temporary investigative stop of a vehicle only if the agent is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle’s occupant is engaged in criminal activity.” United States v. Jacquinot, 258 F.3d 423, 427 (5th Cir.2001). Under the Supreme Court’s pronouncement in United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), factors that may be considered in determining reasonable suspicion include: (1) the area’s proximity to the border; (2) characteristics of the area; (3) usual traffic patterns; (4) the agents’ experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior. Jacquinot, 258 F.3d at 427. “No single factor is determinative; the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers.” United States v. Moreno-Chaparro, 180 F.3d 629, 631-32 (5th Cir.1998).
Having considered the facts in this case, we conclude that the totality of the circumstances before us support the district court’s denial of the motion to suppress. The critical facts buttressing reasonable suspicion are that Delacruz was first observed with his window halfway down, and immediately upon seeing the agents he exhibited a look of surprise, ducked down, and slumped back in his seat to the point of not being visible to the agents; that his tinted window was rolled up by the time the agents caught up to the vehicle; that while paralleling and driving in front of the vehicle, the agents observed Delacruz ducking down in the back seat as if attempting further to hide; and that this took place on a section of 1-35, headed north from the border, that is a known smuggling route for transporting illegal aliens and narcotics.
At the outset, we do not disagree with the district court’s observation that this case is decidedly close. Moreover, it is obvious that several of the BrignoniPonce factors that may be considered in a case such as this, are either not present or when present have weakened force. For example, because Soto’s vehicle was observed and apprehended more than fifty miles from the Mexican border — even though only nine or ten miles beyond that benchmark distance — there is no standalone inference that the vehicle’s journey originated at the border. See United States v. Jones, 149 F.3d 364, 368 (5th Cir.1998) (“[A] car traveling more than fifty (50) miles from the border is usually viewed as being too far from the border to support an inference that it originated its journey there.”); United States v. Melendez-Gonzalez, 727 F.2d 407, 411 (5th Cir. 1984) (holding that proximity element was missing where vehicle was stopped sixty miles from the Mexican border). We have explained that proximity to the border can be a “paramount factor” in assessing reasonable suspicion. United States v. Orozco, 191 F.3d 578, 581 (5th Cir.1999). The fifty-mile benchmark is not, however, a “bright line rule.” Jones, 149 F.3d at 368. Moreover, “[c]lose proximity to the border is not required if other specific articulable facts support a finding of rea *410 sonable suspicion.” United States v. Ceniceros, 204 F.3d 581, 584 (5th Cir.2000).
Because the stop took place over fifty miles from the border, we “look at the remaining factors ‘most carefully’ to ensure the stop complied with the requirements of the Fourth Amendment.” Orozco, 191 F.3d at 581 (quoting United States v. Rodriguez-Rivas, 151 F.3d 377, 380 (5th Cir.1998)). In doing so, we note that even where a vehicle is beyond the fifty-mile benchmark, “the fact that the northbound vehicle was traveling from the direction of the Mexico-United States border [can be] a legitimate factor when viewed in conjunction with the other factors.” Id. In this case, Soto’s vehicle was observed heading northbound from the direction of the border. Furthermore, the magistrate judge and district court took note that the portion of 1-35 near Cotulla, Texas, where Soto’s vehicle was stopped, is a notorious route for the smuggling of aliens and illicit drugs.[3] This conclusion is supported by the testimony of Agent Barberena, and indeed, we have previously observed that this segment of 1-35 is “known by border patrol agents as a route out of Mexico for undocumented aliens.” United States v. Pacheco, 617 F.2d 84, 86 (5th Cir.1980).
Nevertheless, the most compelling consideration of the circumstances in our analysis is the behavior of Delacruz upon seeing the Border Patrol agents. First, he exhibited a look of shock and immediately ducked down and slumped back, out of the agents’ sight. To be sure, we have held that a look of surprise upon seeing a Border Patrol agent at a closed immigration checkpoint is of “little significance.” Moreno-Chaparro, 180 F.3d at 632. We have further held that mere slouching, although relevant, is not sufficient to justify a stop. Pacheco, 617 F.2d at 86-87. “[Pjassengers commonly slump in their seats to rest, particularly at nighttime hours .... Therefore, we have required a more affirmative indication of an attempt to hide for this factor to weigh in favor of the presence of reasonable suspicion.” Zapata-Ibarra, 212 F.3d at 883 (internal quotation marks and citations omitted). In this case, however, the events occurred at about eight o’clock in the morning, and the “affirmative indication of an attempt to hide” is explicit: Delacruz was sitting normally until, in an immediate and simultaneous reaction to seeing the officers, he “ducked below the window.”[4] Indeed, we can think of no plausible explanation for this conduct— nor has one been offered by Soto — but that he was attempting to hide from law enforcement officers. This is akin to the behavior of the defendant in United States v. Espinosa-Alvarado, 302 F.3d 304 (5th Cir.2002). In that case we determined that Border Patrol agents’ reasonable suspicion was bolstered by the fact that the defendant “chose the moment the agents *411 appeared in the distance to slump down in such a way that he disappeared (or nearly disappeared) from the sight of an agent looking straight down into the vehicle.” Id. at 306-07 (internal footnotes omitted).
Adding to the agents’ suspicion, Delaeruz continued “hunching down.” When the agents pulled up alongside the Nissan approximately 45 seconds later, Delacruz’s darkly tinted rear window — which was halfway down when the Nissan initially passed the Tahoe — had been rolled up, further arousing suspicion. Although the windows were dark, the agents were able to observe Delacruz through the front windshield, while in the front of the Delacruz vehicle, and they noticed that he was “ducking down” in the back seat in a manner that suggested a further attempt to hide.[5]
Notwithstanding these facts, we acknowledge that several factors in the Brignoni-Ponce calculus lend little or no weight to the panel’s conclusion. For example, the number of passengers in the Nissan was not unusual, and the record contains no discussion of recent criminal activity in the area. Similarly, the Nissan’s registration to an address in Kings-ville, Texas — located in the southeastern part of the state — is of no particular moment to the present analysis. As the district court noted, Agents Barberena and Esqueda were recent additions to the Border Patrol whose experience in immigration enforcement at the time of the stop was “relatively sparse compared to agents in many other cases,” although Agent Barberena had substantial prior experience detecting illegal activity — including experience with illegal aliens — as a member of the Laredo Police Department.[6]
Finally, we attach little significance to the failure of the driver, Garcia, to make eye contact with the agents while they drove beside her vehicle for approximately three minutes. This Court has consistently observed that, ordinarily, “whether a driver looks at an officer or not should not be accorded much weight.” United States v. Rangel-Portillo, 586 F.3d 376, 381 (5th Cir.2009) (internal quotation marks, citations, and modifications omitted); Moreno-Chaparro, 180 F.3d at 632. The agents also testified, however, that Garcia appeared to be very nervous, tapping her fingers “excessively” on the steering wheel as if she were listening to music. We are persuaded that, at the very least, this observation — taken in conjunction with the other facts known to the agents — does not *412 detract from the reasonableness of the agents’ suspicion.
It bears emphasizing that none of the less persuasive factors mentioned above necessarily cut against the Government in our assessment of reasonable suspicion; we simply need not afford every observation special significance one way or the other. The weaker aspects of the Brignoni-Ponce considerations must be judged in relation to the more weighty facts of this case — in particular, the suspicious behavior of Delacruz, who was observed attempting to conceal himself from Border Patrol agents for a period of minutes in a northbound vehicle sixty miles from the border on a route known for illegal alien trafficking. These facts, viewed in tandem with the totality of the circumstances before us, are sufficient to establish reasonable suspicion that illegal activity was afoot.
III.
In sum, the investigative stop, for the reasons set forth above, was justified by reasonable suspicion. The Border Patrol agents articulated specific facts which, together with rational inferences from those facts, reasonably warranted suspicion of illegal activity. We AFFIRM the district court’s denial of Soto’s motion to suppress and consequently his conviction.
AFFIRMED.

. Agent Barberena testified that Delacruz’s expression was an “oh-my-god look.”

. When asked whether he and Agent Esqueda discussed Delacruz’s behavior before following the vehicle, Agent Barberena testified: "Yes. We looked at each other. It’s like, uh, something is not right.” The dissent erroneously interprets Barberena’s suspicion that "something [was] not right" as a description of Delacruz s behavior.

. Of course, “merely being on a road frequently used for illegal activity is insufficient to justify an investigative stop.” United States v. Diaz, 977 F.2d 163, 165 (5th Cir.1992). Nevertheless, "[i]t is well established that a road's reputation as a smuggling route adds to the reasonableness of the agents’ suspicion.” United States v. Zapata-Ibarra, 212 F.3d 877, 881 (5th Cir.2000) (internal quotation marks and citations omitted).

. The dissent reduces Delacruz’s behavior to mere "slouching.” The agents testified, however, that Delacruz "ducked” immediately upon seeing them and continued "ducking down” until his vehicle was pulled over. The dissent thus fails to view the evidence in the light most favorable to the Government, as we are obligated to do. Neither Pacheco nor any of the other cases cited by the dissent involve an individual who, like Delacruz, looked surprised and immediately ducked out of sight upon seeing Border Patrol agents, later denying that he did so and failing to offer any alternative explanation for his conduct.

. We should be clear that Delacruz's graphic and continuing attempt to hide from the sight of the Border Patrol officers is key to reasonable suspicion in this case — not merely the startled look on his face upon first spying the officers’ car.

. The record reflects that both agents had recently completed the approximately four-month Border Patrol training program and subsequently had served approximately two months with the Border Patrol before the events in question. As the magistrate judge observed, however, Agent Barberena had previously served for 15 years in the Laredo Police Department, five years of which he served as a patrolman. Testimony at the suppression hearing disclosed that during that time, Agent Barberena "often encountered undocumented aliens” and "was paired up several times with Border Patrol agents who provided some formal training in recognizing undocumented aliens in the field.” The magistrate judge further concluded that "in relaying his observations from the passenger seat of the patrol unit, [Agent Esqueda] benefited from Agent Barberena’s knowledge and lengthy experience in law enforcement.” These factual findings, which were adopted by the district court, are supported by the record. See also United States v. Neufeld-Neufeld, 338 F.3d 374, 382 (5th Cir.2003) (concluding that in deciding to make an investigative stop, agent with one and one-half years of experience benefited from partner agent’s thirteen years of experience).