# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 17-50633

————————

United States Court of Appeals
Fifth Circuit

**FILED**
July 12, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JORGE ROBLES-AVALOS,

Defendant–Appellant.

\* \* \* \* \* \*

————————

No. 17-51037

————————

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

ISMAEL GUEVARA-LOPEZ,

Defendant–Appellant.

————————

Appeals from the United States District Court
for the Western District of Texas

————————

No. 17-50633
No. 17-51037

Before SMITH, WIENER, and WILLETT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this consolidated action, Jorge Robles-Avalos and Ismael Guevara-Lopez appeal their convictions on the sole ground that their traffic stop lacked reasonable suspicion. We find no error and affirm.

I.

Defendants were passengers in a car stopped by Border Patrol Agent Barry McLain while he was on roving patrol west of Marfa, Texas. McLain had been an agent for eight years, all at the Marfa Station. Around midnight, he saw a Chrysler 300 driving west on U.S. Highway 90. Of the areas he patrolled, that section of Highway 90 was the most heavily trafficked by smugglers. The vehicle was driving 45–50 mph in a 75 mph zone, and the driver tapped the brakes several times as though lost or looking for a place to pull over.

McLain followed for 15–20 minutes and did not observe any traffic violations or signs of illegal activity. He noted, however, that at that time of night the road is typically used only by ranchers, there is nothing in the surrounding area except ranch land, and the Chrysler was not a vehicle he recognized as belonging to any of the local ranchers.

The vehicle then pulled into Ryan Roadside Park, a small area off the highway with a couple of picnic tables and a trash can. The park is directly across from the entrance to the aerostat balloon, a feature of the Tethered Aerostat Radar System,[1] which is visible from Mexico and has historically been

---

[1] *See* Dave Long, *CBP's Eyes in the Sky*, U.S. CUSTOMS & BORDER PROTECTION, https://www.cbp.gov/frontline/frontline-november-aerostats.

used as a guidepost for those walking illegally across the border. In that area, there have been multiple apprehensions of those smuggling aliens or controlled substances. McLain had been involved in three other apprehensions next to the balloon in the two weeks before the November 17 stop, and other agents in his office had recently apprehended several additional loads of smugglers.

McLain drove past the parked car at 45–50 mph. He illuminated his alley light as he passed and saw the female driver standing by the vehicle looking down the highway. He could see through the open driver door and did not observe any passengers; he likewise did not see anyone else standing near the car. After passing it, McLain took Farm Road 505 to Highway 166 and parked to monitor traffic. About a half hour later, he saw the same Chrysler traveling east on Farm Road 505. It then turned north on Highway 166, which is a scenic loop and goes to Interstate 10. McLain testified that other than local ranchers, legitimate traffic never uses this route at night.

When the Chrysler passed McLain's parked vehicle, his headlights illuminated the interior, and he observed three passengers in the front and several in the back. McLain thought it strange to see three passengers in the front, not only because those passengers were not previously with the driver but because McLain knew the Chrysler 300 had only two bucket seats in the front.

The roadside park is over 100 miles from the border if traveled via public roads, and McLain did not suspect that the vehicle had originated at the border. Instead, he surmised that the driver had been waiting for illegal aliens who had hiked from the border, as the roadside park is only twenty-five miles from the border as the crow flies. McLain also noted that the driver did not look his way when she passed him, even though his headlights were on and shined directly into the vehicle.

No. 17-50633
No. 17-51037

His suspicion aroused by the sudden appearance of numerous passengers, McLain again began following the Chrysler and ran the plates. The car was registered to a female in Odessa, Texas, which is a known destination for illegal aliens and narcotics. McLain testified that the driver was taking an inconvenient route to Odessa from Marfa. Agents had been able to identify smugglers because they would pass an officer and then be seen a short time later coming back after picking up their load. As a result of the high number of apprehensions, however, smugglers changed their strategy and began picking up the load, going straight, and finding another place to turn. McLain testified he suspected that might be the case here, based on the driver's chosen route to Odessa.

When McLain stopped the car in which defendants were passengers, he saw backpacks of marihuana on the passengers' laps. He told the occupants they were under arrest, and a search of the car revealed 122.42 kilograms of marihuana between the backpacks and the trunk. A later immigration check showed that the occupants were illegally in the country.

After being charged, defendants filed a joint motion to suppress. After a hearing, the magistrate judge issued a recommendation to deny the motion, which the district court adopted. Defendants conditionally pleaded guilty of aiding and abetting possession with intent to distribute marihuana under 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 , reserving an appeal of the denial of suppression.

## II.

For reasonable suspicion to stop a vehicle while on roving patrol, an agent must be "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle's

occupant is engaged in criminal activity."[2]  The district court found this test satisfied, as do we.

## A.

We review the district court's findings of fact for clear error and its conclusions of law *de novo*.  *United States v. Hernandez-Mandujano*, 721 F.3d 345, 348 (5th Cir. 2013).  The facts are uncontested and must be viewed in the light most favorable to the prevailing party, here, the government.  *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007).

## B.

In *United States v. Brignoni-Ponce*, 422 U.S. 873, 884−85 (1975), the Court outlined factors to consider for reasonable suspicion.  This circuit has distilled from that case several relevant considerations, including

> (1) the area's proximity to the border; (2) the characteristics of the area; (3) usual traffic patterns; (4) the agents' experience in detecting illegal activity; (5) the driver's behavior; (6) the aspects or characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior.

*United States v. Olivares-Pacheco*, 633 F.3d 399, 402 (5th Cir. 2011).

Instead of looking at the factors as a checklist, we examine the "totality of the circumstances" to see whether the agent had a "particularized and objective basis" for his suspicion.[3]  He is permitted to "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that 'might well elude an untrained

---

[2] *United States v. Soto*, 649 F.3d 406, 409 (5th Cir. 2011) (quoting *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001)).

[3] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

No. 17-50633
No. 17-51037

person.'" *Id.* (quoting *Cortez*, 449 U.S. at 418).

The totality of the circumstances supports the denial of the motion to suppress. When a route is commonly known to be used for smuggling, that weighs in favor of reasonable suspicion. *United States v. Zapata-Ibarra*, 212 F.3d 877, 881 (5th Cir. 2000). McLain testified that, having patrolled the relevant area for eight years, he knew that the stretch of Highway 90 near the aerostat balloon is a frequently used pickup spot. He had made three other arrests there in the previous two weeks and knew of several more by other officers.

When combined with other factors, it also contributes to the reasonable-suspicion analysis that it was midnight. *See United States v. Chavez-Chavez*, 205 F.3d 145, 148–49 (5th Cir. 2000). The only usual traffic at that time of night is local ranch vehicles, and McLain, though admitting he did not know every local vehicle, did not recognize the Chrysler. And a sedan stood out from the typical truck or SUV used by ranchers.[4]

Further, the driver was going well below the posted speed limit, was tapping the brakes as though lost or searching for something along the road, pulled over at a known pickup point, and looked into the distance. Then, when McLain again saw the vehicle a short time later, numerous additional passengers had appeared. The first factor of proximity to the border is not satisfied, but its absence is outweighed by the presence of other articulable facts that, together, adequately support reasonable suspicion. *See United States v. Inocencio*, 40 F.3d 716, 722–23 (5th Cir. 1994). Moreover, as noted, the hiking distance from the border was only twenty-five miles.

---

[4] *See Zapata-Ibarra*, 212 F.3d at 883–84 (finding that nonlocal traffic on a secondary road at an unusual time is suspicious).

No. 17-50633
No. 17-51037

Although many of the individual factors here may be innocent enough when seen in isolation, we are satisfied, viewing the totality of the circumstances in the light most favorable to the government, that the stop was supported by reasonable suspicion.[5]  The judgment of conviction is AFFIRMED.

---

[5] *Olivares-Pacheco*, 633 F.3d at 402 ("Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers.") (quoting *United States v. Jacquinot*, 258 F.3d 423, 427–28 (5th Cir. 2001)).