**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Guillermo RODRIGUEZ–MARTINEZ and Auscension Rodriguez-De Leon, Defendants-Appellants.**

No. 80–1062
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Oct. 1, 1980.

Mario J. Martinez, El Paso, Tex., Patrick A. Abeyta, Lubbock, Tex., for defendants-appellants.

LeRoy Morgan Jahn, San Antonio, Tex., Richard P. Mesa, Asst. U.S. Atty., El Paso, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

POLITZ, Circuit Judge:

Guillermo Rodriguez-Martinez and Auscension Rodriguez-De Leon were found guilty of conspiracy to possess marijuana with intent to distribute and of possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Appellants appeal the denial of their motion to suppress. The sole issue is whether the Border Patrol agents had a sufficient basis to stop and search appellants' motor vehicle. Concluding that they did, we affirm.

At approximately 2:00 A.M. on September 19, 1979, Border Patrol officers Alonzo

---

C. Mendoza and Clyde E. Jones stopped appellants' stationwagon on Farm-to-Market Road 2810 some eight miles south of Marfa, Texas. Information transmitted by intrusion devices called sensors indicated that the vehicle was coming from an uncontrolled area of the Texas-Mexico border at a rate of speed considered rapid for the road surface and terrain. Both officers had been with the Border Patrol and assigned to the Marfa office for over a year. Officer Mendoza is a life-long resident of Marfa, a town with a population just over 2600. Both officers knew the local residents and were familiar with their vehicles. Stationwagons were seldom seen on FM 2810, a road more suited for pickup trucks and four-wheeled vehicles. A few hours earlier, the officers had stopped a vehicle 10 miles south of Marfa and arrested six undocumented aliens. The officers decided to stop appellants' vehicle to verify appellants' citizenship when they failed to recognize the driver and saw the vehicle had an out-of-county license plate. While questioning appellants as to their citizenship, officer Mendoza flashed his handlight in the back of the stationwagon. He saw a blanket covering something which came up to the level of the rear seat. A burlap bag partially protruded from under the blanket and the odor of marijuana pervaded the interior of the vehicle. The blanket covered several burlap bags which were found to contain 177 pounds of marijuana. Appellants were placed under arrest and advised of their constitutional rights, after which they gave a full statement detailing their acquisition and the delivery point of the marijuana.

The intercept was not at the border or a functional equivalent of the border, therefore we must determine whether the officers had reasonable suspicion for making the stop as required by *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and its progeny:

> Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area. Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual pattern of traffic on the particular road, and previous experience with alien traffic are all relevant. [citations omitted] They also may consider information about recent illegal border crossings in the area. . . . Aspects of the vehicle itself may justify suspicion. . . . In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling. [citations omitted]

422 U.S. at 884, 95 S.Ct. at 2582, 45 L.Ed.2d at 618.

We find our decision in *United States v. Lujan-Miranda*, 535 F.2d 327 (5th Cir. 1976) to be the classic "goose case." The factual situation in *Lujan-Miranda* is identical in all essential aspects, and the legal issue is a mirror image of that now before us. It is controlling and dispositive.

FM 2810 forms one side of a roughly shaped triangular area with Marfa at its apex and the Rio Grande River at its base, running southwest from its origin in Marfa for approximately 54 miles to Ruidosa, Texas, a Mexican bordertown of less than 100 people. FM 2810 is paved for 32 miles and then deteriorates into a poorly maintained, rough, rocky, dirt road known as Pinto Canyon Road for the last 22 miles into Ruidosa. (The evidence in *Lujan-Miranda* reflected the paved portion was then only 30 miles. The inexorable march of progress obviously continues.) Because of the extremely difficult, mountainous terrain of the unpaved portion of FM 2810, vehicles can safely attain a maximum speed of only 30–40 miles per hour, and in some places must slow to a walk. Pinto Canyon Road is typically traveled by pickup trucks or four-wheel drive vehicles.

No permanently fixed Border Patrol checkpoints are located on FM 2810; its 54 miles are sparsely populated with approximately ten families. There are no cities or towns. It lies approximately 150–200 miles from the Big Bend National Park and its northern terminus connects with Highway 90, which in turn extends to the Canadian Border.

The other leg of the triangle is formed by U.S. Highway 67, a paved road running 59 miles from Marfa to the Rio Grande River at Presidio, Texas. There are two permanent Border Patrol checkpoints on Highway 67. The base of the triangle is formed by FM 170 which runs parallel to the Rio Grande River to a point about 40 miles northwest of Presidio, where it connects with Pinto Canyon Road at Ruidosa.

Within this triangular shaped border area is a rough-terrained, mountain region composed of the Knotty Mountain Range. This topography makes vehicular traffic virtually impossible except along the constructed roads, effectively isolating the border area from Marfa and the rest of the interior. Most of the roads interconnecting with FM 2810 are ranch roads, lateral dirt roads, or trails, which serve the local ranches and do not intersect with any road except the paved portion of FM 2810 and Pinto Canyon Road. These ranch roads generate little local traffic.

There are three points of entry from Mexico along this isolated stretch of the border: Ruidosa, Candelaria and Presidio. Ruidosa and Candelaria are unmanned Class B ports of entry, actually fords of the Rio Grande River, with no permanent Border Patrol personnel stationed in either village. Presidio is the only Class A, continuously-manned, port of entry into the area with a bridge crossing of the Rio Grande River.

Legitimate, northbound traffic from Mexico into Texas entering through Presidio usually proceeds north on Highway 67, the only fully paved road to Marfa. FM 2810 carries local traffic and has had a high incidence of use as an artery to the interior by illegal aliens. For example, during the first nine months of 1979, with the road patrolled only 11% of the time, there were 33 cases involving 123 undocumented aliens and 36 principal alien transporters on FM 2810.

The terrain, the availability of unmanned entry points, the normal traffic pattern and the high incidence of alien arrests create a strong reason to believe that non-local vehi-

cles traveling north on FM 2810 from Pinto Canyon Road may contain illegal aliens. To assist in controlling the area, the Border Patrol has installed intrusion devices to alert it to northbound traffic coming from Pinto Canyon Road. There are four such sensors: two on the unpaved Pinto Canyon Road within 14 to 19 miles of the border, one immediately north of the end of Pinto Canyon Road, and the fourth further north on the paved portion of FM 2810. The activation of these devices provides the Border Patrol officers with the date, time and location of the intrusion and enables the officers to detect the direction of travel, speed, and the number of vehicles. With this information the officers are able to calculate an intercept point. When the intercept is effected, if the officers recognize the vehicle or driver the vehicle is waved on without inquiry. If this recognition does not occur, the vehicle is stopped and the inquiry as to citizenship is made.

Appellants' stationwagon was stopped after the sensors informed the officers that a vehicle was proceeding north on FM 2810, at a rapid rate of speed, coming from Pinto Canyon Road, an uncontrolled river area on the border, just after 1:30 A. M., shortly after another vehicle loaded with undocumented aliens had been stopped on the same road, and after the officers, with full knowledge of the incidence of illegal traffic in the area, failed to recognize the occupants or the stationwagon, a vehicle rarely seen on the Pinto Canyon Road, and in this instance, one with a non-local license plate.

The district judge, after reviewing the foregoing evidence, concluded that the stop of the vehicle was based on a reasonable suspicion arising from articulable facts, and denied the motion to suppress. Appellants argue that the facts known to the Border Patrol officers did not meet the objective standard of reasonable suspicion as set out in *Brignoni-Ponce.* We disagree. The objective criteria enunciated in *Brignoni-Ponce* are not inclusive and exclusive; they are illustrative and instructive. As the Supreme Court noted in footnote 10 of *Brignoni-Ponce* : "Each case must turn on the

totality of the particular circumstances." Considering the totality of the particular circumstances confronting officers Mendoza and Jones on the night of September 19, 1979, on FM 2810 just south of Marfa, we agree with the conclusion that they had a reasonable suspicion for making their stop of appellants.

For other cases supporting the validity of a stop, see: *United States v. Petty*, 601 F.2d 883 (5th Cir. 1979); *United States v. Carroll*, 591 F.2d 1132 (5th Cir. 1979); *United States v. Villareal*, 565 F.2d 932 (5th Cir. 1978); *United States v. Estrada*, 526 F.2d 357 (5th Cir. 1976); *United States v. Canales*, 527 F.2d 440 (5th Cir. 1976); and *United States v. Lara*, 517 F.2d 209 (5th Cir. 1975).

The convictions are AFFIRMED.