**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Humberto ORONA–SANCHEZ, Defendant-Appellant.**

No. 80–1829
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 25, 1981.

Herbert E. Cooper, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

POLITZ, Circuit Judge:

█ This appeal poses the question whether a stop by a roving border patrol met the requirements enunciated in *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and its progeny, and was thus constitutionally permissible. *E. g., United States v. Pacheco*, 617 F.2d 84 (5th Cir. 1980); *United States v. Lamas*, 608 F.2d 547 (5th Cir. 1979); *United States v. Sarduy*, 590 F.2d 1355 (5th Cir. 1979). *Brignoni-Ponce* teaches that stops by roving border patrols are consistent with Fourth Amendment strictures only if the agents "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." 422 U.S. at 884, 95 S.Ct. at 2581. Several fac-

tors weigh into the determination whether a stop is justified.[1] No one factor is controlling; rather, the "totality of the particular circumstances" governs. *Id.* at 885 n.10, 95 S.Ct. at 2582 n.10.

Humberto Orona-Sanchez appeals his convictions, after a bench trial, of two counts of unlawfully transporting aliens into the United States in violation of 8 U.S.C. § 1324(a)(2), and the denial of his motion to suppress evidence seized at the time of his warrantless arrest.

## Context Facts

█ On April 15, 1980, Border Patrol Agents Peter Teuber and Hugo Rex, who were assigned to the border patrol station at Las Cruces, New Mexico, were directed to observe traffic for alien smuggling on New Mexico Highway 26. Highway 26 is a paved, two-laned, lightly traveled state roadway which traverses small ranch and farming communities. It extends approximately 60 miles and connects Deming, New Mexico to Hatch, New Mexico, passing through the small community of Nutt, New Mexico. Deming is 35 air miles from the United States-Mexico border; Hatch is 60 air miles from the border; Nutt is 50 air miles from the border and just under 100 road miles from El Paso.

The agents had information from their anti-smuggling unit and from the Hatch police department that Highway 26 was being used by smugglers to circumvent the Border Patrol checkpoint located 18 miles west of Las Cruces on Interstate 10, a transcontinental highway running east and west. Interstate 25 runs north from El Paso through Las Cruces and Hatch. Highway 26 runs southwest from Hatch through Nutt to Deming and intersects with I–10 well west of the checkpoint. To avoid the Las Cruces checkpoint, one wishing to travel west from El Paso could proceed north on

1. Factors to be considered include: (1) characteristics of the area in which the vehicle is encountered; (2) unusual patterns of traffic on the particular road; (3) proximity to the border; (4) information about recent illegal crossings in the area; (5) appearance of the vehicle; (6) number and appearance of the passengers; (7) behavior of the driver; and (8) behavior of the passengers. *Brignoni-Ponce*, 422 U.S. at 884–85, 95 S.Ct. at 2581–82. The experience of the agents is also a relevant factor. *Id.* at 885, 95 S.Ct. at 2582; *Pacheco*, 617 F.2d at 85.

I–25 to Hatch, then southwest on Highway 26 to Deming, intersecting with I–10 west.

Agents Teuber and Rex each had four years' experience as Border Patrol agents. Rex had checkpoint experience which resulted in over 300 alien smuggling cases; Teuber's experience involved over 100 cases. Agent Teuber had no experience patrolling Highway 26 prior to April 8, 1980. Agent Rex had been assigned to Highway 26 patrol for one week. The agents did not know the people who lived in the area nor were they familiar with the vehicles driven by the residents and those who routinely might visit or attend the residents.[2]

Working the 4:00 p. m. to midnight shift on April 8, 1980, Agents Teuber and Rex received instructions to observe traffic on Highway 26 and began their patrol. At approximately 8:30 p. m. they stationed their unit just east of Nutt, a community comprised of a handful of families, on the south side of the road. They parked a few feet off the roadway, perpendicular to the road, behind a clump of mesquite. As an occasional passing vehicle drew abreast of their position, the agents flashed their headlights into the interior of the passing vehicle.

Orona-Sanchez approached in his 1975 Ford pickup truck. As the pickup passed, the agents flashed their lights into the cab and observed the vehicle and its passengers. They noticed that: the three occupants had dark hair and appeared to be of Latin origin, they appeared startled by the light, the truck was a ¾ ton pickup with a camper shell, it appeared to have a heavy load, the windows of the camper were either covered by curtains or painted over and the truck had California license plates. The agents decided to follow the pickup. They then noticed it had wide tread tires and the agents testified the driving became erratic.

As the agents passed the pickup, they observed Orona-Sanchez looking straight ahead and they could only see the tops of the heads of the two passengers who had "sort of slouched down." The agents testified that they first determined to overtake an automobile, also with California plates, which was proceeding directly ahead of the pickup, believing it might be the scout car of a "lead car/load car" operation. In doing so they said they started losing sight of the pickup which "slowed down considerably,"[3] so the agents decided to stop and re-position their unit alongside the road. By this time they were several miles west of Nutt. As the pickup passed for the second time, only the driver was visible. The agents decided to stop the vehicle for an immigration inspection. After speaking with the driver, they insisted on access to the camper and found several undocumented aliens. Appellant was placed under arrest.

At trial the agents testified about their patrol experience, that alien smuggling was frequently done by the use of a pickup with a camper shell, and that in prior cases where campers or vans were used the windows were often painted over or would have curtains blocking the view inside. They also testified that as they drove ahead of the pickup they could tell from the movement of the pickup's headlights that it was being driven erratically, usually within its lane but sometimes crossing the centerline, an indication of a heavy load.

The agents conceded on cross-examination that there was nothing unusual about a pickup truck being in the area of Highway 26 around Nutt, heavily loaded, with off-road tires. Neither did they find it surprising that drivers and occupants of vehicles would look startled when lights were suddenly flashed directly into their vehicles. Further, Agent Teuber testified that he had

---

**2.** This lack of familiarity with the people, terrain and vehicles of the area sharply distinguishes this case from the factual situation existing in our recent roving border patrol decision, *United States v. Rodriguez-Martinez*, 626 F.2d 1232 (5th Cir. 1980), in which we found a *stop to be constitutional.*

**3.** As to change in speed of the pickup, it was stipulated that if the aliens in question were to testify they would all state that the speed of the pickup did not change immediately prior to the stop and arrest.

no idea where the vehicle was coming from, negating any suggestion that the agents were aware that the vehicle had come from the border.

### Border Crossing?

When a vehicle is stopped by a roving border patrol, a threshold consideration is whether the vehicle has come from the border. As we noted in *Lamas*, 608 F.2d at 549:

> In a number of recent decisions, this Court has stated that a vital element of the *Brignoni-Ponce* test is whether the agent had 'reason to believe that the vehicle had come from the border.' *United States v. Ballard*, 600 F.2d 1115, 1119 (5th Cir. 1979); *United States v. Rivera*, 595 F.2d 1095, 1098 n.4 (5th Cir. 1979); *United States v. Lopez*, 564 F.2d 710, 712 (5th Cir. 1977); *United States v. Escamilla*, 560 F.2d 1229, 1231 (5th Cir. 1977); *United States v. Woodward*, 531 F.2d 741, 743 (5th Cir. 1976); *United States v. Martinez*, 526 F.2d 954, 955 (5th Cir. 1976); *United States v. Del Bosque*, 523 F.2d 1251, 1252 (5th Cir. 1975) (per curiam). We have found this element of the *Brignoni-Ponce* test missing where the stop occurred a substantial distance from the border. *See United States v. Lopez*, 564 F.2d 710, 712 (5th Cir. 1977) (55 miles from border); *United States v. Escamilla*, 560 F.2d 1229, 1230 (5th Cir. 1977) (70 miles from border); *United States v. Martinez*, 526 F.2d 954, 955 (5th Cir. 1976) (50 miles from border); *United States v. Del Bosque*, 523 F.2d 1251, 1252 (5th Cir. 1975) (per curiam) (60 miles from border).

To this list we add *Pacheco, supra*, where the stop was made 85 miles from the border.

This factor alone is not controlling, however, for "absence of a reason to believe the vehicle had come from the border ... is not dispositive." *Pacheco*, 617 F.2d at 86. In such an instance, we are constrained to determine whether other "articulable facts ... reasonably warrant" the requisite suspicion. *Brignoni-Ponce*, 422 U.S. at 884, 95 S.Ct. at 2581; *Pacheco, supra*. Our examination of the record convinces us that the other facts do not reasonably warrant suspicion of illegal activity. A ¾ ton pickup is not unusual or unexpected in the area, and no weight is to be given to the fact that it was apparently heavily loaded and had off-road tires. *See Lamas, supra*. It is not unusual for one in the position of appellant to be startled by lights being flashed suddenly into the interior of his vehicle. It would not be unusual for someone to appear to drive somewhat erratically immediately after being subjected to the "light in the face" intrusion, especially when the offending vehicle then pulls onto the highway and begins to overtake. Nor is there anything vaguely suspicious about the presence of persons who appear to be of Latin origin in New Mexico where over one-third of the population is Hispanic.

That the two passengers "hunkered down" was considered relevant but insufficient in *Pacheco*, even when combined with other observations, *citing Lamas*. The avoidance of eye contact was also considered of "no weight whatsoever" in *Pacheco*, 617 F.2d at 87, *citing Escamilla, supra*, and *quoting Lopez*, 564 F.2d at 712: "Reasonable suspicion should not turn on ophthalmological reactions."

The district judge found this to be a close case and without singling out any one factor, concluded that all circumstances, taken together, added up to sufficient reasonable suspicion. We cannot agree. We are not persuaded that absent any "reason to believe that the vehicle had come from the border," there are sufficient other articulable facts reasonably to warrant suspicion that the vehicle contained undocumented aliens. Each factor considered by the agents is non-remarkable and unsuspicious. Taken together and considered in the crucible of these agents' experiences, we still find them wanting. In so doing we give substantial weight to the fact that these agents were new to the area and were not familiar with the residents, their vehicles or traffic patterns.

The motion to suppress should have been sustained. The convictions are RE-VERSED.