# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2021

Lyle W. Cayce
Clerk

No. 19-41008

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

VERNON D. NELSON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:18-CR-870

Before HIGGINBOTHAM, SMITH, and DENNIS, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Vernon Nelson pleaded guilty pursuant to a conditional plea agreement to conspiracy to possess with intent to distribute 50 kilograms or more of marijuana, reserving the right to appeal the denial of his suppression motion. He claims that evidence seized from his vehicle and statements he made should have been suppressed because Border Patrol agents stopped him without reasonable suspicion and subjected him to custodial interrogation without first giving him *Miranda* warnings. We affirm.

**I.**

Around 9:55 P.M. on October 30, 2018, Vernon Nelson approached the U.S. Border Patrol Laredo North checkpoint in a tractor-trailer. The checkpoint is located north of Laredo near the 29-mile marker on Interstate Highway 35. Border Patrol Agent (BPA) Yajaira Flores asked Nelson whether he was a United States citizen and if he would consent to a scan of his tractor-trailer. Nelson answered both questions affirmatively.

Nelson went to a second area, where he was met by BPA Marcus Stauffiger. Stauffiger has worked as a Border Patrol agent for over nine years, performing various duties at the Laredo North station. For two of those years, he was detailed to the Drug Enforcement Administration (DEA) where he received specialized training and investigated narcotics crimes. Agent Stauffiger scanned Nelson's tractor-trailer using the "Vehicle and Cargo Inspection System" (VACIS), which he described in laymen's terms as "an x-ray machine" used on commercial vehicles. From his scan of Nelson's trailer, he observed only several bundle-shaped objects and the outline of a dolly. He initially suspected that these objects were equipment being stored by Nelson. But his assessment changed when he saw a seal on the back door of the trailer. From his experience, Agent Stauffiger knew that these seals are typically used to ensure that nothing goes missing from a cargo load during transport. If the trailer contained only equipment, there would be no need for a seal. Given these anomalies, Agent Stauffiger typically would have directed the truck to the secondary inspection area. But ongoing construction at the checkpoint prevented him from doing so.[1] Nelson left the checkpoint.

---

[1] At the suppression hearing, Agent Stauffiger testified that due to the ongoing construction, "Jersey barriers" forced drivers "to turn out towards the exit before the scan was completed." Due to this setup, it was "not feasible for [agents] to make the motions or the indication to the driver to go to the secondary inspection area."

Now suspecting the scan revealed bundles of narcotics in Nelson's trailer, Agent Stauffiger showed the scan to BPA Abraham Cantu. The two agents decided to pursue the tractor-trailer to perform a roving-patrol stop. The agents left in separate marked vehicles and pulled Nelson over six miles north of the checkpoint.

Once stopped, Nelson presented Agent Cantu with a bill of lading, indicating that he was carrying a load of five pallets of Kellogg's cereal. Agent Stauffiger doubted this account, believing that his scan revealed only two pallets at most. He also noticed inconsistencies in the bill of lading, including a misspelling of Kellogg, two seal numbers instead of one, and a misspelling of seal as "SeAl."

After reviewing the bill of lading, Agent Stauffiger asked Nelson if he would step out of the truck. He was neither handcuffed nor formally placed under arrest. Agent Stauffiger told Nelson: "It looks like there's bundles inside the trailer." He asked Nelson for consent to search the trailer and told him that, if he refused, a service canine would be requested. Nelson refused, and Agent Stauffiger called for a service dog, which had to be brought from the checkpoint.[2] Agent Stauffiger informed Nelson that if the service canine did not alert, Nelson would be free to go. While waiting approximately five to ten minutes for the service canine to arrive, Agent Stauffiger asked Nelson several questions. The district court summarized the two-minute conversation based on the video recording from Agent Stauffiger's body camera and the agent's recollections at the suppression hearing:

> BPA Stauffiger:     "How long you've been driving?"
>
> Defendant:          "Thirty-one years."
>
> BPA Stauffiger:     "How about for this company?"

---

[2] At this point, Agent Stauffiger activated his body camera and informed Nelson that he was being recorded.

| | |
|---|---|
| Defendant: | "I just recently purchased this truck." |
| BPA Stauffiger: | "Is it registered to you?" |
| Defendant: | "Yeah." |
| BPA Stauffiger: | "How about the trailer, same thing?" |
| Defendant: | Nods heads in an apparent 'yes.' |
| BPA Stauffiger: | "How long ago did you purchase the trailer?" |
| Defendant: | "About a year." |
| BPA Stauffiger: | "Where did you get it from?" |
| Defendant: | "Atlanta." |
| BPA Stauffiger: | "Is that where you're from originally?" |
| Defendant: | "Nah, I'm from Houston." |
| BPA Stauffiger: | "Just got a better deal in Atlanta?" |
| Defendant: | "I saw it on Facebook. I jumped on it." |
| BPA Stauffiger: | "Well, how much did you get it for?" |
| Defendant: | Inaudible. |
| BPA Stauffiger: | "Did he already get your I.D.?" (pointing at BPA Cantu) |
| Defendant: | Shakes head in apparent 'no.' |
| BPA Stauffiger: | "Is it in the truck? Or do you have it on you?" |
| Defendant: | "It's on the dashboard." |
| BPA Stauffiger: | "I notice a lot of the trailers get registered out of like Oklahoma, Kentucky? Why is that? Is it just cheaper?" |
| Defendant: | "Yeah." |

| BPA Stauffiger: | "But it's still registered out of Houston?" |
| Defendant: | "Yeah." |
| BPA Stauffiger: | "I notice a lot of the major companies do it out of Oklahoma. Maine is another big one. Nebraska. It's rare that ya get a Texas-plated trailer." |
| Defendant: | "Right." |

Within a few minutes, BPA Frederick Irizarry arrived with the service canine. It alerted on the trailer, at which point the BPAs searched it and found approximately 72 kilograms of marijuana, packed in tightly wrapped bundles, consistent with BPA Stauffiger's assessment of the VACIS images.

Nelson was charged with conspiracy to possess and possession with intent to distribute 50 kilograms or more of marijuana.[3] He moved to suppress his statements to Agent Stauffiger, contending that Stauffiger interrogated him without first giving him *Miranda* warnings.

At the suppression hearing, the Government called Agent Stauffiger as its only witness and submitted the video recording from the agent's body camera as an exhibit. After the suppression hearing, Nelson filed a supplemental motion, arguing for the first time that the stop violated his Fourth Amendment rights and therefore the evidence derived from the stop should be suppressed. The magistrate judge recommended denying Nelson's motion. Nelson filed objections to the magistrate judge's report, but the district court adopted the report in full and denied Nelson's motion to suppress. Nelson subsequently pleaded guilty to conspiracy to possess with intent to distribute 50 kilograms or more of marijuana. As part of his plea agreement, Nelson reserved the right to appeal the denial of his suppression

---

[3] *See* 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846.

motion and was sentenced to three years in prison with three years of supervised release.[4]

On appeal, Nelson argues that the district court erred by denying his suppression motion for three reasons. First, Nelson argues that the BPAs lacked the reasonable suspicion required to conduct a roving-patrol stop, rendering all evidence obtained from the stop inadmissible. Second, Nelson argues that he was in custodial interrogation when questioned by Agent Stauffiger, making his statements inadmissible, because he was not given *Miranda* warnings. Finally, Nelson argues that Border Patrol agents lack authority to conduct investigative stops solely related to non-immigration offenses—an argument he concedes is foreclosed under this Court's precedent.[5]

## II.

When considering the denial of a motion to suppress, this Court reviews factual findings for clear error and legal conclusions, including whether an officer had reasonable suspicion to support a stop and whether *Miranda*'s guarantees have been impermissibly denied, de novo.[6] Evidence is viewed in the light most favorable to the party that prevailed in the district court—in this case, the Government.[7] And where, as here, "a district court's

---

[4] On June 4, 2020, the district court granted Nelson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on his health and the COVID-19 pandemic. He was re-sentenced to a credit for time-served in the Bureau of Prisons, followed by a term of one year of supervised release. *United States v. Nelson*, No. 5:18-CR-00870 (S.D. Tex. June 4, 2020) (order granting compassionate release).

[5] Nelson also argued that the stop was unreasonably prolonged in violation of the Fourth Amendment. On appeal, Nelson does not raise this issue, and it is therefore waived. *See Adams v. Unione Mediterranea di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.").

[6] *See United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015); *United States v. Harrell*, 894 F.2d 120, 122–23 (5th Cir. 1990).

[7] *See United States v. Rodriguez*, 702 F.3d 206, 208 (5th Cir. 2012).

denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses."[8] A district court's ruling to deny a suppression motion should be upheld "if there is any reasonable view of the evidence to support it."[9]

## III.

Nelson first argues that the district court erred in denying his motion to suppress evidence obtained from the stop of his vehicle, contending the stop was unconstitutional because the BPAs lacked reasonable suspicion to make it. A Border Patrol agent on roving patrol "is justified in stopping a vehicle if he reasonably suspects, based on specific articulable facts together with rational inferences from the facts, that the vehicle might be engaged in illegal activity."[10] In determining whether reasonable suspicion exists, we often consider the common sense factors set forth in *United States v. Brignoni-Ponce*:[11] (1) proximity to the border; (2) characteristics of the area; (3) usual traffic patterns on a particular road; (4) agent's previous experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle; (7) information about recent illegal trafficking in aliens or narcotics in the area; and (8) the number, appearance, and behavior of the passengers.[12] "[E]ach case must be examined based on

---

[8] *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (internal quotation marks and citation omitted).

[9] *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (internal quotation marks and citation omitted).

[10] *United States v. Casteneda*, 951 F.2d 44, 46 (5th Cir. 1992).

[11] 422 U.S. 873 (1975).

[12] *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001) (citing *Brignoni-Ponce*, 422 U.S. at 884–85). To the extent the Government argues that the stop here was nothing more than a delayed secondary inspection, making the *Brignoni-Ponce* factors inapplicable here, we disagree. Because Nelson left the checkpoint without any indication that the agents wanted him to stop and was surprised to be pulled over six miles later, the intrusion here was akin to a roving-patrol stop, as it was neither conducted at a known

the totality of the circumstances known to the agents at the time of the stop and their experience in evaluating such circumstances."[13]

The Government argues, and we agree, that the totality of the circumstances here support a finding that Agent Stauffiger had reasonable suspicion to justify stopping Nelson's vehicle. First, our Court has recognized that proximity to the border is "a paramount factor in determining reasonable suspicion."[14] While there is no bright line test with regard to this factor, we have held that "[t]he proximity element is satisfied . . . if the defendant's car was first observed within 50 miles of the United States/Mexico border."[15] It is undisputed that Nelson's vehicle was first spotted at the Laredo-North checkpoint less than 50 miles from the border, here 29 miles, a factor weighing in favor of the reasonableness of Stauffiger's suspicions.[16]

---

location nor in a "regularized manner." *See United States v. Martinez-Fuerte*, 428 U.S. 543, 559–60 (1976).

[13] *United States v. Rangel-Portillo*, 586 F.3d 376, 380 (5th Cir. 2009) (internal quotation marks and citation omitted).

[14] *United States v. Garza*, 727 F.3d 436, 441 (5th Cir. 2013) (cleaned up); *see also United States v. Melendez-Gonzalez*, 727 F.2d 407, 411 (5th Cir. 1984) ("[T]his Court has repeatedly emphasized that one of the vital elements in the *Brignoni-Ponce* reasonable suspicion test is whether the agents had reason to believe that the vehicle in question recently crossed the border.").

[15] *Jacquinot*, 258 F.3d at 428.

[16] Nelson also argues for the first time on appeal that the proximity factor if found, should not weigh "heavily" in favor of reasonable suspicion, because the stop was made on a major highway near Laredo, a densely populated city. *See United States v. Freeman*, 914 F.3d 337, 343 (5th Cir. 2019) ("[W]e hesitate to conclude that driving on a road coming from a densely populated city such as Laredo, even if situated along the border, can weigh *heavily* in favor of reasonable suspicion."). But Nelson did not raise this argument below, and thus, has not preserved it for appellate review. *See Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."). Even so, proximity here would carry weight because "there are other factors present which suggest illegal activity." *See Freeman*, 914 F.3d at 343.

Furthermore, "an officer's experience is a contributing factor in determining whether reasonable suspicion exists."[17] "[A]fter proximity to the border, [experience] is likely the most important factor because the facts are to be viewed through the eyes of an objective officer with Agent [Stauffiger's] experience."[18] Agent Stauffiger received five months of training at the Border Patrol Academy, and he received nine months of post-academy training after that. As a Border Patrol Agent, he worked various operations at Laredo North for nine years and worked at the DEA for two years investigating narcotics crimes. His training and experience at the border, as well as his specialized work investigating narcotics crimes support his suspicions here.[19]

From this extensive experience, Agent Stauffiger noticed irregularities with Nelson's vehicle. He knew the seal on Nelson's trailer was likely incompatible with a scan that seemingly showed a small amount of personal equipment inside. He also knew the VACIS images of Nelson's trailer were consistent with images of bundles of narcotics, facts further supporting Stauffiger's suspicion that Nelson was engaged in illegal activity.[20]

---

[17] *United States v. Zapata-Ibarra*, 212 F.3d 877, 882 (5th Cir. 2000) (internal quotation marks and citation omitted).

[18] *Freeman*, 914 F.3d at 345.

[19] *See Garza*, 727 F.3d at 441 (noting the relevance of training in analyzing an agent's experience); *Zapata-Ibarra*, 212 F.3d at 882 (concluding that Border Patrol agent with ten years of experience in the same area weighed in favor of finding reasonable suspicion existed).

[20] *See United States v. Nichols*, 142 F.3d 857, 871 (5th Cir. 1998) ("This Court has in the past given weight to an agent's observation that a vehicle's appearance was atypical of vehicles in the particular area in question."); *United States v. Ramirez-Mendoza*, 657 F. App'x 298, 300 (5th Cir. 2016) (per curiam) (unpublished) (concluding that agents' witnessing bundles of suspected narcotics being delivered to private property where vehicle had travelled weighed in favor of reasonable suspicion to stop vehicle).

Nelson points out that his consent to the initial scan weighs against a finding of reasonable suspicion, and we agree;[21] that the Government's failure to produce evidence related to other *Brignoni-Ponce* factors suggests that Stauffiger lacked reasonable suspicion to stop Nelson's vehicle. But we have repeatedly counselled that "not every factor must weigh in favor of reasonable suspicion for it to be present."[22]  Here, just 29 miles from the border, a highly experienced Border Patrol agent noticed anomalies with Nelson's vehicle and saw what appeared to be bundles of narcotics inside. Accepting Nelson's compliant behavior, viewing the totality of the circumstances in the light most favorable to the Government, we are satisfied that Stauffiger's stop of Nelson's vehicle was supported by reasonable suspicion.

## IV.

Next, Nelson challenges the district court's denial of his motion to suppress statements he made to Agent Stauffiger while waiting for the canine unit to arrive, arguing that he was in custody and therefore entitled to *Miranda* warnings prior to being questioned.

Generally, a suspect's incriminating statements during a custodial interrogation are inadmissible if he has not first received *Miranda* warnings.[23] "A suspect is 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."[24] "The requisite

---

[21] *Cf. United States v. Resendez*, 578 F.2d 1041, 1044 (5th Cir. 1978) ("When the actions of a vehicle indicate flight from law enforcement officers, this court has upheld stops based on reasonable suspicion.").

[22] *United States v. Cervantes*, 797 F.3d 326, 329 (5th Cir. 2015) (citing *Garza*, 727 F.3d at 440).

[23] *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

[24] *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015) (cleaned up).

restraint on freedom is greater than that required in the Fourth Amendment seizure context."[25] Whether a suspect is in custody is an objective determination, depending on the totality of the circumstances, that looks to the circumstances surrounding the interrogation and whether, given the circumstances, a reasonable person would have felt he was at liberty to terminate the interrogation and leave.[26] "[T]his court has repeatedly considered certain key details when analyzing whether an individual was or was not in custody," including (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave.[27]

These factors support the finding that Nelson was not in custody at the time Stauffiger questioned him. Nelson was only questioned for two minutes,[28] on the side of the highway, visible to those driving past.[29] Agent Stauffiger's questioning was never hostile or accusatory: his tone was cooperative and he never accused Nelson of lying or committing a crime.[30] Finally, Nelson was not handcuffed or otherwise physically restrained—he

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 775.

[28] *See United States v. Ortiz*, 781 F.3d 221, 233 (5th Cir. 2015) (interview lasting between twenty to forty minutes in car did not weigh in favor of conclusion that suspect was in custody).

[29] *See id.* at 231 ("The fact that an interview takes place in a public location weighs against the conclusion that a suspect is in custody.").

[30] *Cf. United States v. Chavira*, 614 F.3d 127, 134 (5th Cir. 2010) (concluding that customs officers engaged in accusatory questioning when they began asking suspect "questions unrelated to her entry" and told her "they knew she was not telling the truth and to confess").

answered Stauffiger's questions while leaning against the hood of the agent's vehicle.[31]

While Nelson makes much of the fact that he was not free to leave while waiting for the canine unit, this Court has recognized that temporary detention, by itself, does not automatically rise to the level of custodial interrogation.[32] A reasonable person in Nelson's position would have understood that "so long as . . . everything checked out," he would be able to leave shortly.[33] Such limited restraint is not the type associated with formal arrest.[34]

We conclude that Nelson was not subject to custodial interrogation and therefore was not entitled to *Miranda* warnings. The district court did not err in declining to suppress his statements.

## V.

Finally, Nelson argues that Border Patrol agents lack authority to conduct roving stops related to non-immigration offenses. But as Nelson concedes, this argument is foreclosed by this Court's precedent recognizing that Border Patrol agents possess authority under *Brignoni-Ponce* to "make roving stops on the basis of reasonable suspicion of *any* criminal activity."[35]

## VI.

We affirm the district court's denial of Nelson's motion to suppress.

---

[31] *Cf. United States v. Cavazos*, 668 F.3d 190, 194 (5th Cir. 2012) (determining that handcuffing of suspect demonstrated that officers had "physical dominion" over him).

[32] *See United States v. Bengivenga*, 845 F.2d 593, 597-98 (5th Cir. 1988) (en banc).

[33] *See id.* at 600.

[34] *See id.*

[35] *United States v. Perkins*, 352 F.3d 198, 200 (5th Cir. 2003) (relying on *United States v. Cortez*, 449 U.S. 411, 421-22 (1981)) (emphasis added).