# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2026

Lyle W. Cayce
Clerk

No. 24-40632

United States of America,

*Plaintiff—Appellee*,

*versus*

Juan Jose Ponce,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:23-CR-304-1

Before Southwick, Higginson, and Douglas, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Defendant-Appellant Juan Jose Ponce appeals the district court's denial of his motion to suppress evidence, arguing that a border patrol agent conducted an unlawful search of his vehicle. For the reasons discussed below, we AFFIRM.

I.

At approximately 5:00 a.m. on May 19, 2023, Ponce arrived at a border checkpoint in Sarita, Texas. Ponce was driving an SUV with a roof rack on top. Agent Carlos Garcia had worked at that checkpoint for about fifteen

years and was on duty that morning. When Ponce arrived, Garica first asked about his citizenship. Ponce responded that he was a legal permanent resident in the United States and handed Garcia his identification card. Ponce was wearing a surgical face mask but removed it when Garcia asked him to lower the mask so that he could confirm Ponce's identity. Garcia then asked Ponce if he was traveling alone, and Ponce answered that he was. Garcia perceived Ponce to be nervous because he was "quiet" and "wouldn't really interact" with Garcia. During this conversation, Garcia also noticed that there was a ladder inside the SUV, which he found unusual because most people he encounters at the checkpoint transport ladders on their roof racks instead.

Garcia then requested that Ponce open the back hatch of the SUV so that he could look inside the vehicle. Neither Garcia nor Ponce remembers precisely what Garcia said in his request. At a hearing before the district court, Garcia testified that he was unsure of his exact words but claimed that he "asked [Ponce] for consent to open the back, so [he] could take a look inside." Garcia testified that he "never" announces that he will open a vehicle; he "always ask[s] for consent." Ponce also could not recall the exact wording but believed Garcia said, "I'm going to open the back door," to which Ponce responded something "like, yeah. Okay." Regardless of precisely what was said, Ponce agreed and unlocked the doors for Garcia to open the back hatch. As described in his testimony, Ponce believed that Garcia would simply look into the vehicle, not manipulate anything inside.

Once the back hatch was opened, Garcia made several observations. First, Garcia saw "a bunch of random stuff," including the ladder, and then noticed a speaker box. The speaker box was not fully closed; the lid's screws were "sticking up." The unscrewed lid led Garcia to believe that there may be an individual hiding in the speaker box because, in his experience, it is "common" for people to transport undocumented individuals inside speaker

boxes. Garcia did not recall ever finding someone in a speaker box himself but testified that it happens "all the time" at the checkpoint. Garcia then lifted the top of the speaker box and saw a woman inside. The SUV was brought to a secondary inspection point, and it was determined that the woman was unlawfully in the United States.

Ponce was indicted on one count of illegally transporting an undocumented person in violation of 8 U.S.C. § 1324. He moved to suppress all evidence from Garcia's search of the vehicle, arguing that the search violated the Fourth Amendment because (1) Ponce's consent did not extend to searching items inside the cargo area, and (2) Garcia lacked probable cause to search. The Government responded that Ponce agreed to open the back hatch, and once Garcia could see into the vehicle, he observed suspicious conditions that gave him probable cause to search. The Government further argued that Ponce's consent permitted Garcia to search the entire vehicle, including containers inside. The district court conducted a hearing on the motion, at which Garcia and Ponce each testified.

The district court denied Ponce's motion. It determined that regardless of the exact words Garcia used, he "asked Ponce to open the back hatch," and "[a]t minimum, Ponce consented to Agent Garcia opening the back hatch of his SUV and glancing inside." The district court found that Ponce's consent was valid and voluntary and extended to a search of the containers in the vehicle. The district court also held that even if Ponce's consent did not extend to the speaker box, Garcia had probable cause to search. Ponce subsequently entered a conditional guilty plea but reserved his right to appeal the district court's denial of the motion to suppress.

Ponce now asks us to reverse the district court's order denying his motion to suppress, to vacate his conviction and sentence, and to remand for further proceedings. According to Ponce, he did not consent to Garcia

opening the speaker box, and Garcia lacked probable cause to do so. The Government opposes Ponce's positions on both consent and probable cause.

## II.

"On appeal from a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the" party that prevailed at the district court. *United States v. Tenorio*, 55 F.4th 465, 468 (5th Cir. 2022). Where "a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Nelson*, 990 F.3d 947, 953 (5th Cir. 2021) (quoting *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)). "We uphold a district court's denial of a suppression motion 'if there is any reasonable view of the evidence to support it.'" *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)).

"The scope of consent to a search is question of law" reviewed *de novo*, but "[t]he factual circumstances surrounding the consent are reviewed for clear error." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (quoting *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003)). "The determination that probable cause existed is a legal conclusion reviewed *de novo*." *United States v. Keller*, 123 F.4th 264, 267 (5th Cir. 2024).

## III.

"It is well established that Border Patrol agents stationed at a permanent checkpoint site may stop a vehicle, question its occupants about citizenship, and conduct a visual inspection of the vehicle without any individualized suspicion that the car or its occupants are involved in criminal activity." *Mendoza-Gonzalez*, 318 F.3d at 666 (citing *United States v.*

*Martinez-Fuerte*, 428 U.S. 543, 556–62 (1976)). "The Fourth Amendment, however, prohibits a search of the vehicle in the absence of a warrant, with only two exceptions": (1) "the consent of the owner to conduct the search," or (2) "probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Id.*

Both exceptions are relevant to this appeal. Ponce does not dispute the fact that he consented to opening the back of the SUV for Garcia to "glance" inside the vehicle, but he contends that the scope of his consent did not extend to opening the speaker box. Ponce also argues that each fact giving rise to probable cause had a reasonable explanation that Garcia failed to consider. The Government argues that Ponce's consent permitted Garcia to search any containers inside the SUV, but even if it did not, Garcia had probable cause to search the vehicle and containers inside. We agree with the Government's latter point. It is undisputed that Ponce consented to Garcia opening the back of the SUV and looking inside. During that quick, consensual search, Garcia gained probable cause to search the vehicle and open the speaker box.

## A.

"An agent has probable cause to search when, considering the totality of the circumstances, 'the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present.'" *United States v. Martinez*, 102 F.4th 677, 684 (5th Cir. 2024) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). "Probable cause requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* (cleaned up). "A police officer may draw inferences based on his own experience in deciding whether probable cause exists, including inferences that might well elude an untrained person." *United States v. Banuelos-Romero*, 597 F.3d 763, 768 (5th Cir. 2010)

(alteration adopted) (quoting *United States v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009)). Probable cause is "a fluid concept" and is "not readily, or even usefully, reduced to a neat set of legal rules." *Harris*, 568 U.S. at 244 (citation omitted). Instead, it is meant to be "viewed through the lens of common sense." *Id.* at 248.

Our decision in *United States v. McSween*, 53 F.3d 684 (5th Cir. 1995), is similar to this case in many respects. There, it was undisputed that an officer had "consent to search inside the passenger compartment" of a vehicle. *Id.* at 686. Once the officer entered the car, he smelled marijuana— which he was able to identify from his training and twenty-two years of experience. *Id.* The officer did not discover any marijuana within the passenger compartment but proceeded to open the hood, where he noticed a hole in the car's fire wall and, upon closer inspection, discovered a bag of marijuana concealed inside. *Id.* at 685–86. The defendant argued that the smell of marijuana did not give the officer probable cause to search beyond the passenger compartment. *Id.* at 687. We disagreed, holding, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

*United States v. Nichols*, 560 F.2d 1227 (5th Cir. 1977) (per curiam), also presents similar facts. Nichols arrived at a border checkpoint driving a pick-up truck with a large box in the truck bed. *Id.* at 1228. An agent asked Nichols about his citizenship and the box's contents. *Id.* Nichols informed the agent that the box was for gasoline. *Id.* The agent noticed that Nichols was "somewhat nervous" and that the box was large enough to hold a person. *Id.* The agent looked more closely at the box and saw it had a seam, which indicated to him it may have a hidden compartment. *Id.* At that point, the agent asked if he could open the box and look inside, and Nichols consented. *Id.* The agent unscrewed the top but could not see anything inside, so he then

ran a wire into the tank and discovered an extra compartment. *Id.* When he unscrewed the compartment, he found over one hundred and twenty pounds of marijuana. *Id.* We held that "the appellant's nervousness, the agent's past experience, the box size and its outwardly apparent characteristics combined to give probable cause to investigate the box." *Id.*; *see also United States v. Inocencio*, 40 F.3d 716, 720, 723–24 (5th Cir. 1994) (holding that irregularities on a vehicle, including fresh paint on certain parts of a new truck and a raised truck bed, along with a suspect's nervousness, inconsistent statements, and an initial canine search, supported probable cause to search).

Although probable cause cannot be reduced to a bright-line rule, *Harris*, 568 U.S. at 244, our precedent demonstrates two overarching principles relevant here. First, when an officer acting with valid consent discovers facts giving rise to probable cause, the search is constitutional. And second, when officers notice suspicious facts that, combined with their experience, support a reasonable belief that a vehicle contains evidence of criminal activity, they have probable cause to search the vehicle, including containers inside that may contain the anticipated contraband. Such facts are present here.

As soon as Ponce approached the checkpoint, Garcia noticed that Ponce was transporting a ladder inside the SUV despite having a roof rack, which was unusual in Garcia's experience. That observation, along with what Garcia perceived to be a nervous demeanor and Ponce wearing a mask despite stating that he was traveling alone, prompted Garcia to request access to the back of the SUV. Once Ponce consented to opening the back hatch for Garcia to look inside, additional facts gave Garcia probable cause to search inside and open the speaker box: (1) the back of the SUV was cluttered, which Garcia testified is a strategy smugglers use to distract officers from contraband; (2) there was a speaker box, which Garcia knew was a "common" way to hide people; and (3) the speaker box was unscrewed,

indicating that it was not being used for its typical purpose and may be concealing a person. This combination of facts, considered together and in light of Garcia's fifteen years of experience, aligns with our case law to support the district court's finding that Garcia had probable cause to open the speaker box.

B.

Ponce makes three arguments against probable cause, which we address in turn. First, Ponce contends that each of these facts had an innocent explanation Garcia failed to consider. Ponce asserts that the "clutter" in the SUV was for Ponce's construction work, that Garcia did not ask Ponce whether the speaker box worked, and that Garcia did not know whether Ponce only wore the surgical mask to speak with Garcia upon arrival at the checkpoint. But as we explained in *United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir. 1990), "[a] succession of otherwise 'innocent' circumstances or events, . . . may constitute probable cause when viewed as a whole." Courts "do not consider the several factors in isolation, but rather in their interrelated context, where each may reinforce the other, so that the laminated total may indeed be greater than the sum of its parts." *Id.* Officers are not required to probe every potential explanation for unusual facts if their observations and experience lead them to a reasonable belief that a vehicle contains contraband. *See e.g.*, *Banuelos-Romero*, 597 F.3d at 768 ("While there are innocent reasons for windshield replacement, the facts here strongly suggest that someone had accessed the hidden compartment [in the vehicle]. While an untrained person may not find these facts suspicious, [the officer's] training and experience led him to suspect illegal activity."). The irregularities Garcia observed—the ladder, clutter, mask, nervousness, and most importantly, the unscrewed speaker box lid—along with Garcia's experience and reasonable inferences, combined to create probable cause to search the vehicle and open the speaker box.

Second, Ponce argues that we should give Garcia's experience "very little weight" in the probable cause analysis. For support, Ponce cites only *United States v. Orona-Sanchez*, 648 F.2d 1039 (5th Cir. Unit A June 1981). There, our court reversed the district court's denial of the defendant's motion to suppress because the totality of the circumstances did not create reasonable suspicion. *Id.* at 1042. The two agents in *Orona-Sanchez* each had about four years of experience at border checkpoints, but the agents only had a combined one week of experience conducting a roving border patrol in the area where they stopped Orona-Sanchez's vehicle. *Id.* at 1041. Thus, we gave "substantial weight to the fact that these agents were new to the area and were not familiar with the residents, their vehicles or traffic patterns." *Id.* at 1042. That reasoning does not imply that we should discredit Garcia's experience in this case. There, we considered all of the facts together "in the crucible of these agents' experiences," and we do the same here. *Id.*

Relatedly, Ponce insists that the district court was wrong to characterize Garcia's experience at the checkpoint as "extensive," especially because Garcia did not recall ever personally finding someone in a speaker box before. But personal experience discovering specific contraband in a certain type of container is not the level of abstraction appropriate in the "practical and common-sensical" probable cause inquiry. *Harris*, 568 U.S. at 244. Given that probable cause is examined in light of an officer's "training and experience," *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016), individual experiences on duty do not provide a ceiling on what courts consider to be within an officer's knowledge. Additionally, unlike the agents in *Orona-Sanchez*, Garcia has fifteen years of experience at the Sarita checkpoint where he stopped Ponce and testified that the checkpoint agents see people transported in speaker boxes "all the time." Thus, the district court did not err by incorporating Garcia's "extensive experience" in the

totality of the circumstances, and we similarly credit this experience in our analysis.

Finally, Ponce argues that his perceived nervousness does not support probable cause. Garcia testified that Ponce seemed nervous because he was "quiet" and not interacting much with Garcia. In Garcia's experience at the checkpoint, people are usually more engaged. According to Ponce, his behavior, without any accompanying "physical signs or symptoms," does not support probable cause. Although "nervousness alone" is not sufficient to create reasonable suspicion, much less to meet the higher bar of probable cause, *United States v. Monsivais*, 848 F.3d 353, 359 (5th Cir. 2017) (quoting *United States v. Portillo-Aguirre*, 311 F.3d 647, 656 n.49 (5th Cir. 2002)), there is no requirement that a suspect be physically nervous when the totality of the circumstances supports a finding of probable cause. *See, e.g.*, *Inocencio*, 40 F.3d at 723–24 (listing nervousness as one fact supporting probable cause without any indication that the suspects displayed any physical symptoms or signs of nerves); *Nichols*, 560 F.2d at 1228 (same); *Banuelos-Romero*, 597 F.3d at 769 (same). Thus, Ponce's arguments against probable cause are unavailing.

## IV.

We hold that Ponce consented to Garcia looking into his vehicle, and during this consensual look into the SUV, Garcia gained probable cause to search inside the vehicle and to open the speaker box. Accordingly, Garcia's search was consistent with the Fourth Amendment. The district court's order denying Ponce's motion to suppress is AFFIRMED.